MAY MORRISON v. THE ESTATE OF AMASA SESSIONS.

*Adoption—Change of name—Will—Construction—Devise to "law-
ful heirs."*

1. Adoption is the act by which relations of paternity and affiliation
   are recognized as legally existing between persons not so related
   by nature.
2. Adoption in the United States exists only by special statute, and
   its object is to change the succession of property of persons
   dying *intestate*, and to *create* relations of paternity and affilia-
   tion not before recognized as legally existing; and the change of
   name is more an incident than the object of such proceedings.
3. Where the *assent* of a minor is required to adoption proceedings,
   it will be presumed, unless his *dissent* expressly appears, if the
   court is satisfied that such proceedings were for his benefit.
4. The cardinal principle in the interpretation of wills is to arrive at
   and carry out the intention of the testator if it is lawful.
5. In this case the testator is held to have used the term "lawful
   heirs" in its ordinary and well understood sense, as referring to
   a class upon whom descent of property is cast by the statute of
   descent, and not to have intended to include, as one of said heirs,
   May Morrison, his *adopted* child.

Error to Ionia.  (Smith, J.)  Argued April 12, 1888.
Decided May 18, 1888.

Appeal from an order of distribution recognizing an
adopted child of the testator as his heir, which order was
affirmed.  Order reversed in so far as it decrees distribution
to said adopted child, and circuit court directed to decree dis-
tribution to the *heirs at. law* of the testator, and certify the
same to the probate court.  The facts are stated in the opin-
ion.

*Mitchel & McGarry* (*Benton Hanchett,* of counsel), for
appellants, contended:

1. The intention of a testator is to be collected from the whole will taken together; citing 2 Jar. Wills, 841 ; *Hoxie v. Hoxie,* Paige, 187; *Blamire v. Geldart,* 16 Ves. 314; and the language is to be construed in reference to and in connection with the circumstances surrounding him at the time; citing *Kinney v. Kinney,* 34 Mich. 250, 253; *Eberts v. Eberts,* 42 Id. 407.

2. Greater regard is had to such clear intent than to the particular words used in seeking to identify the persons intended; citing *McLeod v. McDonnel,* 6 Ala. 236; *Travis v. Morrison,* 28 Id. 494; *Bond's Appeal,* 31 Conn. 183; *Stevenson v. Druley,* 4 Ind. 519; *Ely v. Ely,* 20 N. J. Eq. 43.

3. Every will should be interpreted, as far as possible, from the standpoint apparently occupied by the testator; citing Schouler, Wills, §§ 466, 469; *Smith v. Bell,* 6 Pet. 68; *Blake v. Hawkins,* 98 U. S. 315; *Brown v. Thorndike,* 15 Pick. 388; *Postlethwaite's Appeal,* 68 Penn. St. 477; *Stevenson v. Druley,* 4 Ind. 519; *Goodhue v. Clark,* 37 N. H. 525.

4. The testator is presumed to have used words in their ordinary sense or primary meaning; citing *Cromer v. Pinckney,* 3 Barb. Ch. 466, 475; Schouler, Wills, § 472.

5. An heir is one to whom the law gives the inheritance on account of his proximity of blood: *Bailey v. Bailey,* 25 Mich. 185; *Goodell v. Hibbard,* 32 Id. 47 ; *Hascall v. Cox,* 49 Id. 435; *See v. Derr,* 57 Id. 369.

6. Where a will is capable of two interpretations, that one should be adopted which prefers blood relatives to strangers; citing 4 Kent, Com. (11th ed.) 535; *Van Kleeck v. Dutch Church,* 20 Wend. 457; *Scott v. Guernsey,* 48 N. Y. 106 ; *Quinn v. Hardenbrook,* 54 Id. 83, 86; *Kelso v. Lorillard,* 85 Id. 182 ; *Wood v. Mitcham,* 92 Id. 375, 379; *Downing v. Bain,* 24 Ga. 372; *Smith's Appeal,* 23 Penn. St. 9.

*Lemuel Clute (B. F. Graves,* of counsel), for claimant, contended :

1. To say that May Morrison is not included within the term "lawful heirs," is repugnant to the letter and spirit of the statute of adoption.

2. If the singular number is used, and there are plural objects, the expression operates *distributively;* citing *Stokes v. Van Wyck,* 83 Va. 724; *Mace v. Cushman,* 45 Me. 262; 2 Jar. Wills, 62; and see *Fraser v. Chene,* 2 Mich. 81.

3. The specific words of the testator are not to be rejected upon a mere suspicion that the user did not know what they meant ; citing *Lavery v. Egan,* 143 Mass. 389, 392.

4. Parol evidence is not admissible to vary meaning of the term "heir," which means statutory he.r; heir *de jure,* and not devisees; citing Wigram, Wills, pt. 2, 297, 298; and presumptions are in favor of the heir in all doubtful cases : Id. 162 ; and his exclusion must affirmatively appear; citing *Areson v. Areson,* 3 Denio, 458, 461; Redf. Wills, 434; 2 Jar. Wills, 841.

CHAMPLIN, J. This is an appeal from the judgment of the circuit court affirming an order of distribution of the probate court, by virtue of which the claimant has been determined to be sole heir at law of Amasa Sessions, deceased, and entitled, under the provisions of his will, to the larger portion of his estate.

The controversy involves the consideration of two questions :

1. The validity of the proceedings in the probate court of Ionia county relative to the adoption of the claimant by Amasa Sessions, and constituting her his heir.

2. The construction and interpretation of the last will of Amasa Sessions.

The proceedings in the probate court were taken under and by virtue of Act No. 26, Laws of 1861, which reads as follows:

"An Act to provide for changing the names of minor adopted children, and of other persons.

" SECTION 1. *The People of the State of Michigan enact,* That whenever any person shall have adopted any minor child, with the consent of the surviving parent or the parents of such child, or, in case of orphanage, with the consent of the nearest of kin to such child, or of the principal officer of a public or incorporated orphan asylum, of which such child may have been an inmate, or of two of the superintendents of the poor, or the directors of the poor, or of any authorized officers or agent of any institution, public or private, in this State or elsewhere, in whose care such orphan child may have been, and, if such child be above the age of seven years, then with the consent of such child, and shall desire to change the name of such child, and to bestow upon him or her the family name of the person adopting such child, with intent to make such child his or her heir, the said person, together

with his or her wife or husband, if any there be, and the surviving parent or next of kin of such child, or such officer of a public or incorporated orphan asylum, or superintendent or directors of the poor, or any authorized officer or agent of any institution, public or private, in this State or elsewhere, may make under their hands an instrument in writing, whereby they shall declare that such child, naming him or her by the name he or she has usually borne, is adopted as the child of such person or persons first above referred to, and that he, she, or they intend to make such child his, her, or their heir, and stating the full name they desire such child shall bear; and the execution of the said instrument shall be, by the persons so signing the same, acknowledged before any officer authorized by law to take acknowledgments of deeds, and thereupon the same may be presented to and filed with the judge of probate of the county where such person or persons adopting such child reside.

" Such probate judge, on being satisfied of the good faith of such proceeding, and that the person or persons adopting such child is or are suitable to have charge thereof, shall make an order, to be entered in the journal of the probate court, that such person or persons do stand in the place of a parent or parents to such child, and that the name of such child be changed to such name as shall be so designated in said instrument for that purpose; whereupon said child shall be thereafter known and called by said new name, and the said person or persons so adopting such child shall thereupon stand in the place of a parent or parents to such child-in-law, and be liable to all the duties, and entitled to all the rights, of parents thereto; and such child shall thereupon become an heir-at-law of such persons, the same as if he or she were in fact the child of such person or persons.

" SEC. 2. The probate court of any county of this State shall have power, by an order to be entered on its journal, to change the name of any adult person who has been one year a resident of such county, who may apply to such court in writing for that purpose, upon such person showing a sufficient reason for such proposed change, to the satisfaction of such court, and that such change is not sought with any fraudulent or evil intent; and provided, that notice of intention to make such application shall be published six weeks prior to the making of such application, and for three successive weeks in a newspaper printed and published in said county where the application is to be made, if there be one, or in a newspaper printed and published in an adjoining

county, or in the nearest county in which a newspaper is or may be printed and published.

"SEC. 3. Such probate judge shall require of the person making the application, under the second section of this act, to pay over to the county treasurer, for the use of the county, a fee of three dollars, and shall furnish to such applicant, if desired, a certified copy of the order made in such matter.

"SEC. 4. This act shall take effect immediately.

"Approved February 2, 1861."[1]

Amasa Sessions and his wife had brought up in their family the claimant's mother. In February, 1865, she married one George W. Hendryx, and on April 30, 1866, claimant was born. In November, 1866, claimant's mother filed a bill for divorce against her husband. In her bill she alleges that her husband left her a few months after their marriage; and, when she next heard from him he was under arrest in Bureau county, Ill., for larceny; and that on August 15, 1866, he. was, by the circuit court of that county, sentenced to be imprisoned and confined in the state penitentiary at Joliet, in said state, for the term of three years; one day of said term to be solitary confinement on a diet of bread and water, and the remainder of the term to be at hard labor. She prayed for the custody and control of their child, May Hendryx. Such proceedings were had in this suit that a divorce was decreed, and she was awarded the care, custody, and control of the infant, May Hendryx, during minority.

Later, and in 1868, claimant's mother was again married to John E. Morrison, and the claimant was called and known as "May Morrison," and has ever since been known and called by that name.

Amasa Sessions and his wife, Emily Sessions, being childless, took steps in 1873 to adopt the child, May Morrison, under the act aforesaid, and the following proceedings were

---

[1] This act was repealed without any saving c'ause by Act No. 171, Laws of 1887, and was held unconstitutional in *People v. Congdon*, 42 N. W. Rep. 986.

had:   On May 9, 1873, the claimant's mother, then Mary E. Morrison, together with Amasa and Emily Sessions, executed, under their hands and seals, and duly acknowledged, the following instrument:

"This indenture, made the 9th day of May, 1873, between Mary E. Morrison, of the township of Berlin, in the county of Ionia, and State of Michigan, mother and surviving parent of May Hendryx, aged seven years on the 30th day of April, 1873, and Amasa Sessions and Emily Sessions, his wife, of the township of Ionia, county of Ionia, and State aforesaid, witnesseth:

"That whereas, the said Amasa Sessions and Emily Sessions have adopted the said child, May Hendryx, with the consent of the said Mary E. Morrison.

"And whereas, the said Amasa Sessions and Emily Sessions desire to change the name of said child, and bestow upon her their family name, with intent to make her their heir.

"Therefore, we, the said parties, Mary E. Morrison of the one part, and Amasa Sessions and Emily Sessions of the other part, do declare that the said child, May Hendryx, is adopted as the child of the said Amasa Sessions and Emily Sessions; and that said Amasa Sessions and Emily Sessions intend to make such child their heir, and that she shall bear the name of May Sessions.

"Witness our hands and seals, at Ionia, Mich., this day and year first above written.

"MARY E. MORRISON.    [L S.]
"AMASA SESSIONS.      [L. S.]
"EMILY SESSIONS.      [L. S.]"

This instrument was duly acknowledged.

This instrument was presented to the judge of probate of Ionia county, and thereupon the following order was entered in the journal of said court:

"STATE OF MICHIGAN,  } ss.
  "County of Ionia,   }

"At a session of the probate court for the county of Ionia, held at the probate office in the city of Ionia on Monday, the 12th day of May, in the year 1873.

"Present, WILLIAM H. WOODWORTH, Judge of Probate.

"In the matter of the adoption of May Hendryx by Amasa

and Emily Sessions, and changing her name to May Sessions.

"Upon reading and filing in this court the declaration of Amasa Sessions and Emily Sessions, his wife, of Ionia, Mich., duly signed, sealed, and acknowledged, thereby declaring that they have adopted a child, May Hendryx, of the age of seven years, the child of Mary E. Morrison, of Berlin, in said county of Ionia, parent of said child now surviving, by and with the consent of the said Mary E. Morrison, duly signed, sealed, and acknowledged by her, and filed in this court, with the intent to make said May Hendryx the heir at law of said Amasa Sessions and Emily Sessions, and desiring that said May Hendryx may hereafter, as such adopted child, bear their family name, and be called May Sessions; and it satisfactorily appearing to the court of the good faith of these proceedings, and that the said Amasa Sessions and Emily Sessions are suitable persons to have charge of said child:

"Therefore it is ordered that said Amasa Sessions and Emily Sessions do hereafter stand as parents to said child, and that the name of said child be called May Sessions, and that said Amasa Sessions and Emily Sessions shall be liable for all the duties, and entitled to all the rights, of parents of said minor child, and that said child, May Sessions, become the heir at law of said Amasa Sessions and Emily Sessions, the same as if she was indeed their own child."

The probate journal showed that the order of adoption, and another order following it, constituted the proceedings of the day, as entered in the journal, the last order being duly signed; but the order of adoption, which preceded it, was not signed by the judge of probate, except as his signature to the proceedings of the day embraced all entered on that day.

May resided in the family until the death of Emily Sessions, which occurred July 6, 1873. This broke up the family, and Mr. Sessions went to live with his nephew, Henry C. Sessions, and May returned to her mother, Mrs. Morrison.

In 1875, Amasa Sessions was married again to Elizabeth E. Tubbs. May Morrison never lived in the family of Mr. Sessions after the death of Emily Sessions.

On February 2, 1874, application was made to the same judge of probate who had made the order adopting the child, for a revocation of said order; and the following journal entry was made:

"At a session of said court, held at the court-rooms in the city of Ionia, in said county of Ionia, on the 2d day of February, A. D. 1874.

"Present, Hon. WM. H. WOODWORTH, Probate Judge.

"In the matter of May Sessions, a minor child of Mary E. Morrison, heretofore, to wit, on the 9th day of May, 1873, adopted by Amasa Sessions and Emily Sessions, as more fully appears by the records, heretofore, to wit, on the 12th day of May, entered in this court in this behalf.

"Now comes Amasa Sessions and Mary E. Morrison, by their petition duly signed, sealed, and verified by their said oaths, setting forth, among other things, that on the 9th day of May, 1873, said petitioners, with Emily Sessions, wife of Amasa Sessions, entered into an indenture, after praying the judge of probate to enter an order changing the name of the daughter of Mary E. Morrison, to wit, May Hendryx, to May Sessions, and to constitute her heir at law of Amasa Sessions and Emily Sessions, which order was granted, and that afterwards, to wit, on the 6th day of July, 1873, Emily Sessions, wife of Amasa Sessions, died, and in consequence thereof said Amasa Sessions is unable to have the control and custody of said child, and praying that said order changing the name of May Hendryx to May Sessions, and constituting her heir at law of Amasa and Emily Sessions, may be set aside and held for naught.

"And after maturely considering the proofs and allegations of the petitioners, and it satisfactorily appearing to the court that the facts set forth in said petition are true, and that the prayer of said petition in that behalf ought to be granted, it is hereby ordered, adjudged, and decreed that the order of this court, heretofore entered in this behalf, to wit, on Monday, the 12th day of May last past, is hereby revoked, set aside, and shall be held for naught.

                              "WILLIAM H. WOODWORTH,
                                        "Judge of Probate."

On July 15, 1879, Amasa Sessions made his last will, in which, after making bequests to his wife, sister, and nephew, is the following :

"4. After all the before-mentioned legacies have been ful-filled, I give and bequeath the remainder of my estate to my lawful heirs."

Amasa Sessions died in 1886. He was childless, and left surviving him his wife, Elizabeth; his brothers Job S., John, and Alonzo; his sisters, Elizabeth P. Arthur and Jane M. Yates; and the children of his deceased brothers, George and Darius, and of his deceased sister, Sila, who claim under the will as his heirs. May Morrison also claims the residuum of his estate as his sole heir under the fourth clause of the will.

Application was made by the administrator with the will annexed to the probate court for an order determining who were the heirs of Amasa Sessions, and for distribution. Upon the hearing the probate court adjudged and decreed—

"That the said May Sessions is the sole heir of said deceased, and that all of the real estate belonging to the estate of said deceased is vested in said heir, subject to the homestead and dower rights of said Elizabeth T. Sessions, widow of said deceased, to have and to hold forever."

It is this action of the probate court which we are asked to review.

The constitutionality of the act is drawn in question by counsel for appellants, but we do not find it necessary to pass upon that, as it is not necessary to a disposition of the case, and it is only when it is so that we will review legisla-tive action.

"Adoption" has been defined to be the act by which rela-tions of paternity and affiliation are recognized as legally existing between persons not so related by nature. A pro-ceeding which so materially affects the succession of property and the rights of natural heirs is a very important one. It is not recognized by the common law of England, and exists in the United States only by special statute. Only a few of the states have ingrafted it upon their jurisprudence. But

among many of the continental nations it has been practiced from the remotest antiquity. It appears to have been a necessary concomitant of the type of archaic society when the family constituted the unit of the community, and was an important factor in developing society into the broader community called the state. Mr. Maine, in his work of Ancient Law, says:

"We must look on the family as constantly enlarged by the absorption of strangers within its circle, and we must try to regard the fiction of adoption as so closely simulating the reality of kinship that neither law nor opinion makes the slightest difference between the real and adoptive connection."

It flourished and was regulated by laws in both of the classical nations of antiquity.

In Greece, in the interests of the next of kin whose rights were affected by the case of adoption, it was provided that the registration should be attended with certain formalities, and that it should take place at a fixed time, the festival of Thargelia.

In Rome the system was in vogue long before the time of Justinian, and the ceremonies to accomplish the result were cumbered with much formality, but he reduced the system to a code, which simplified the proceedings, and from which modern legislation upon the subject has derived its principles, and adapted them to our civilization and wants.

It either required an imperial rescript or a proceeding before a magistrate to accomplish the purpose. Where resort was not had to an imperial rescript, if the person to be adopted was *alieni juris,* the parties appeared before a magistrate, and executed a deed in his presence,—

"Declaring the fact of adoption; the parties to the adoption—that is, the person giving, the person given, and the person receiving—being personally present to give their consent. But it was sufficient if the consent of the party adopted were expressed by his not declaring his dissent,—*non contradicente.*" Sanders, Just. Inst. 103 *et seq.*

The effect of adoption was to cast the succession on the adopted in case the adopting father died intestate. Some other consequences followed on the changed relation, but sufficient has been noticed to show that the real object of such proceedings is to change the succession of property of persons dying intestate, and to create relations of paternity and affiliation not before recognized as legally existing, and that the change of name is more an incident than the object of such proceedings. Our statute has the same object, and no one can fail to see the similarity of the proceedings required by it and the regulations of Justinian above quoted.

Objection is made that the record nowhere discloses that May Morrison, being more than seven years of age, gave her consent to the proceedings. As seen above, the civil law presumed the assent of the minor unless his dissent expressly appeared. If the proceeding was one that was beneficial to the minor, and the court was satisfied upon that point, her assent would be presumed, upon well-recognized principles. That it was for the benefit of the minor to be adopted into the family of Mr. Sessions at the time the proceedings were had, there can be no doubt.

It is no less certain that the unexpected change in the family of Mr. Sessions by the death of his wife changed altogether his plans and prospects for the future, and rendered it better that the child, May, should return to the care and protection of her mother. Mr. Sessions and her mother, with the aid of the probate court, attempted in good faith, no doubt, to undo what had been done towards the adoption of the child. It may have been, and probably was, unauthorized by law, but still it is significant when considered with reference to the will afterwards made by Mr. Sessions. We think it may be considered as settled, under the facts and circumstances of this case, that Mr. Sessions, from the time of the order revoking the order adopting the child, fully believed and regarded May Morrison as no longer his child

or heir.　It he had died intestate, and she were here claiming a distributive share as heir, we should feel obliged to pass upon all the questions raised.　But he left a will, and the only question is the proper construction of that will.　The cardinal principle in the interpretation of wills is to arrive at and carry out the intention of the testator if it is lawful.

Having the evidence before us, which convinces us that, at the time he made the will, and after, he did not regard May Morrison, the appellee, as his heir, it is clear that he did not intend to include her in the distribution of his estate under the fourth clause of his will.　The testator used the term "lawful heirs" in its ordinary and well-understood sense, as referring to a class upon whom descent of property was cast by the statutes of descent.　Had he intended the bequest for her, he would not have said "lawful heirs," but "lawful heir."　He had not her in his mind, but his numerous kindred who by the statute would inherit his property.

In a recent case in Missouri, the supreme court, in a case where an adopted child claimed under a will which devised property to "the nearest and lawful heirs of mine," draw the distinction very properly between "lawful heirs" and an heir by adoption.　Mr. Justice Brace said :

"The *status* or relation of an adopted heir is a lawful one, since the law sanctions and provides a method for its creation; but the relation is not the creature of the law, but of the deed of adoption.　A child by adoption is, in a limited sense, made an heir, not by the law, but by the contract evidenced by deed.　'Adopted heir,' or 'heir by adoption,' would be appropriately descriptive of such relation.　Contradistinguished from such an heir are those upon whom the law casts descent, who are constituted heirs by law.　These are appropriately described as heirs at law or heirs by the law.　*　*　*　The relation of an heir by adoption is an exceptional and unusual one, and does not come within the ordinary and usual meaning of the words, 'lawful heirs,' and those words ought not to be held *ex vi termini,* to include an adopted heir."　*Reinders v. Koppelman,* 94 Mo. 344 (7 S. W. Rep. 290).

Entertaining no doubt respecting the intention of the testator to give his property, by the term "lawful heirs," to his brothers and sisters, and the children of any deceased brother or,sister by the right of representation (*Eyer v. Beck, ante,* 179), and that it was,not his intention to include in that term the claimant, May Morrison, or May Sessions, as she is called in the order appealed from, we hold that she has no claim upon any share of his estate, and an order must be entered reversing the order of the circuit court, and it must be certified to that court to reverse and set aside the order appealed from so far as it directs or decrees distribution to May Sessions, and to enter an order decreeing distribution to the heirs at law of Amasa Sessions, and certify the same to the probate court.

The appellants will recover their costs of both courts.

SHERWOOD, C. J., and LONG, J., concurred. CAMPBELL, J., did not sit. MORSE, J., took no part in the decision.