Hillsborough, }
June 7, 1910. }

## MORSE *v.* OSBORNE, *Guardian.*

An adopted child is not "issue," within the meaning of the statute defining the rights of a surviving husband or wife in the estate of a deceased wife or husband; and the share of a surviving adopting parent in the estate of the one deceased is the same as it would be if no child had been adopted.

PROBATE APPEAL. Transferred from the January term, 1910, of the superior court by *Wallace,* C. J., on an agreed statement of facts.

Joseph C. Morse died January 13, 1909, leaving as the only persons entitled to share in his estate a widow, Drusilla A. Morse, who is the appellant, and the appellee's ward, Doris A. Morse, who was legally adopted by Joseph and Drusilla on April 4, 1903. December 13, 1909, the widow duly executed and filed a release of her dower and homestead rights in the real estate of her deceased husband, and claimed to be entitled in fee to one half of the estate remaining after the payment of debts and expenses of administration, under sections 10 and 11, chapter 195, Public Statutes. Upon her petition for a division of the real estate, the probate court decreed her to be entitled to one third only, and from that decree this appeal was taken.

*Branch & Branch ( Oliver W. Branch* orally), for the plaintiff.

*Alfred Osborne,* guardian, *pro se.*

PARSONS, C. J.   The *status* of an adopted child, unknown to the common law, may now be created in nearly all the states by proceedings authorized by legislative action.  1 Cyc. 917.  As such *status* is entirely created by statute, the numerous and conflicting decisions with reference thereto, based upon the varying language found in the different enactments, are of little value in the present inquiry.

Is an adopted child "issue," within the meaning of sections 10–13, chapter 195, Public Statutes, which give the surviving husband or wife certain rights in the estate of the deceased wife or husband, dependent upon whether such deceased left issue of the marriage or no issue whatever surviving?  Under section 11 of the chapter, the appellant upon the facts stated is entitled in fee to one third of her deceased husband's real estate if he left issue by her surviving him, and to one half if he left " no issue whatever surviving him."   " The word 'issue' means child, grandchild, or other lineal descendant."   *Kimball* v. *Penhallow*, 60 N. H. 448.  In common understanding, the word includes natural descendants and not children by adoption.  *Jenkins* v. *Jenkins*, 64 N. H. 407 ; *Stanley* v. *Chandler*, 53 Vt. 619 ; *New York Life Ins. Co.* v. *Viele*, 161 N. Y. 11, 20 ; *Phillips* v. *McConica*, 59 Ohio St. 1,—69 Am. St. Rep. 753.   " The word 'issue,' as applied to the descent of estates, shall include all the lawful lineal descendants of the ancestor."   P. S., *c.* 2, *s.* 20.   Upon the question whether an adopted child is issue, the statutory definition gives but little aid, for the question is whether by force of the act of adoption the child has acquired the *status* of, or has become, a lawful lineal descendant of the adopting parents.  In *Jenkins* v. *Jenkins*, 64 N. H. 407, the statute appears to have been regarded as defining the word " issue " to mean " heir of the body."   The question in that case was the meaning of the word " issue " in a will probated long before either the adopting or the defining statutes were passed; and inasmuch as the legislative definition was given for use in the construction of statutes (P. S., *c.* 2, *s.* 1 ; Comm'rs' Rep. R. S., *p.* 1, note), the reliance thereon in *Jenkins* v. *Jenkins* adds but little support to the undoubtedly sound result reached.   But the judicial view therein taken in 1887 is doubtless entitled to some weight in ascertaining the meaning given to the word when introduced in 1891 into the statute defining " the rights of the husband or wife, surviving, in the estate of the deceased husband or wife."

The statute providing for the adoption of children was enacted in 1862.   Laws 1862, *c.* 2603.   Section 4 is : " A child so adopted shall be deemed, for the purposes of inheritance by such child, and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the

same as if he had been born to them in lawful wedlock; except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption." Substantially the same language, with some verbal changes and an addition immaterial upon the present question, forms the existing statute. P. S., c. 181, s. 5. The purpose of this statute is to define the *status* of and to confer the right of inheritance upon the adopted child; not to regulate the rights of the surviving adopting parent in the estate of the one deceased.

In 1842, in the Revised Statutes, the husband's common-law right of curtesy was recognized in the provision for the descent of real estate subject to that right. R. S., c. 166, s. 1. The only other statutory reference thereto prior to 1862 appears to be in the reservations to the husband of such right in the acts in relation to married women. Laws 1846, c. 327; Laws 1860, c. 2342. Subsequent enactments enlarging the property-holding capacity of married women contain similar reservations, while the present statute gives the husband an estate by the curtesy " when he would be entitled to hold as tenant by the curtesy at common law." P. S., c. 195, s. 9. As the common law did not recognize the *status* of an adopted child, it seems clear that the statutory adoption of a child was not intended to invest the husband with the common-law right of curtesy. It was so held in a recent case. *Murdock* v. *Murdock*, 74 N. H. 77.

In 1862, the widow's share in her husband's estate, in addition to homestead and dower, depended in part upon whether or not the husband left a lineal descendant. C. S., c. 175, ss. 8, 9, 12. As it is clear the legislature did not understand that the husband's right in his wife's real estate was increased by the capacity of inheriting from the wife conferred upon an adopted child, it is reasonable to conclude that it was not understood the wife's right in her husband's estate was diminished by the capacity of the adopted child to inherit from the husband. The child was rendered capable of inheriting from each, but the rights of husband and wife in the property of the other were not disturbed.

The term "lineal descendant," in the statute determining the right of the wife in the husband's estate, appears in the General Statutes (1867), chapter 183, sections 7–12. In the General Laws, in similar provisions, for "lineal descendant" was substituted "child, or the issue of any child." In this revision the provisions on the subject in behalf of both parties are first grouped together. G. L., c. 202. That the change from "lineal descendant" to "child, or the issue of any child" was not made for the purpose of including adopted children appears from the history of the section directly involved (s. 11), under which the right claimed

depends upon a release of dower and homestead by the widow. *Nute* v. *York*, 66 N. H. 541. This section originated in 1872. By that act, the widow of every person, whether leaving lineal descendants or not, by waiving her dower and homestead and the provision by will in her favor, if any, and releasing her distributive share, could take one third of the estate after payment of debts and expenses. Laws 1872, *c*. 41. This act was in addition to the provisions of the General Statutes in her favor. *Colby* v. *Cate*, 64 N. H. 476.

In 1877, the act of 1872 was modified by the provision that it should not be in force "if there are any children of the testator or intestate by any former wife, or the issue of any such children, living at the time of his death." Laws 1877, *c*. 38, *s*. 1. As the law then was, nothing stood in the way of the widow's taking one third of the estate upon execution of the prescribed waivers and release, except the existence of children of the husband by a former wife or the issue of such children. The commissioners preparing the revision known as the General Laws, in compiling these provisions, made the widow entitled to one third of the real estate in fee under the same circumstances, "when the husband leaves any child, or the issue of any child surviving him," and to one half when he left "no child, nor the issue of any child surviving him." Comm'rs' Rep. G. L., *c*. 196, *ss*. 9, 10. The commissioners apparently intended to restore the act of 1872 giving the widow the right to take one third of her husband's estate in every case, and to make a new provision giving her one half of the estate when he left no child or issue of a child surviving him; but the legislature substituted for section 9 the provision making the right to take one third in fee dependent upon the existence of a child of the marriage. In the language of the statute, she could take one third when the deceased left "any child by her, or the issue of any child by her, surviving him" (G. L., *c*. 202, *s*. 9), while the adoption of section 10 as proposed by the commissioners gave the widow the right to take one half if the deceased left no child or issue of a child surviving him. It seems probable that the same meaning would be attached to the word "child" in each section dealing with subjects so closely connected. Referring to the act of 1877, it is apparent that the child surviving the widow not her own, which would prevent her taking one half the estate, was a child of the deceased by a former wife. Whatever right of inheritance the statute of adoption gives the adopted child, the child by adoption cannot, without doing violence to the ordinary meaning of English words, be spoken of as the child of one of the parents by the other. Neither can an adopted child be said to be the child of the deceased husband by a former wife. It is probable the words were used in

their ordinary sense, and so they must be interpreted in the absence of evidence tending to show a contrary purpose. There is nothing here to justify the conclusion that when a natural child was described an adopted child was also intended. The word "issue" was substituted for "child, or the issue of any child" in the Public Statutes, without intent to change the meaning. Comm'rs' Rep. P. S., c. 194, ss. 10, 13.

An adopted child is not issue within the meaning of sections 10 and 11, chapter 195, Public Statutes; and as the intent of the legislature was to give the husband the same rights in the estate of his wife that she would have in his were he dead and she living (G. S., c. 164, s. 4; Hayes v. Seavey, 69 N. H. 308), the same word has the same meaning in sections 12 and 13. The conclusion in Murdock v. Murdock, 74 N. H. 77, is reaffirmed. In case of adoption, the adopting parents take the same part of the other's estate upon the death of either that they would have taken if they had not adopted the child.

The contrary conclusion in other jurisdictions has not been overlooked. In Missouri, where the right of the widow to take one half in fee in lieu of dower is dependent upon the husband's dying without leaving a child capable of inheriting, it is clear that an adopted child, being made capable of inheriting, is within the statute. Moran v. Stewart, 122 Mo. 295. The Massachusetts statute, that the word "child" shall include adopted child, helps the conclusion in Buckley v. Frazier, 153 Mass. 525. Other cases not so readily distinguishable are not of sufficient weight to overthrow the plain meaning of the simple words of the statute. The vigorous dissent in Markover v. Krauss, 132 Ind. 294,— 17 L. R. A. 806, upon the ground that "by no course of legitimate reasoning can the conclusion be reached that a child by adoption is a child by a former wife," does not seem open to logical answer.

*Appeal sustained.*

All concurred.