**TODHUNTER, ADOPTION OF, In Re**

·Ohio Appeals, 2nd Dist, Franklin Co

No 3299. Decided Feb. 21, 1941

E. O. Ricketts, Columbus, for petitioner-appellee.

Hamilton & Kramer, Columbus, for appellant, Marshall Todhunter.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of the appeal of Marshall Todhunter on questions of law from the judgment of the Probate Court of Franklin County, Ohio.

On March 26, 1940, Fred N. Hysell filed a petition in the Probate Court of Franklin County for the adoption of Anna Mary Todhunter, a minor, eight years of age. He had married Fern Todhunter, the child's mother, on January 15, 1938. Fern Todhunter had previously secured a divorce from Marshall Todhunter, the natural father of the child, in the Common Pleas Court of Fairfield County, Ohio. She had obtained the decree uncontested, and was given custody of the child until the further order of the court. In the decree of divorce and custody it was further ordered that the father, Marshall Todhunter, pay the sum of $3.00 per week for the support of said child. The amount of support money was paid with reasonable regularity, but not in full. Following the marriage of Fred N. Hysell and Fern Todhunter, the child continued to live with her mother and stepfather.

In a hearing before the Probate Court on May 6, 1940, objection was made on behalf of the natural father to the jurisdiction of the court on various grounds, including the claimed unconstitutionality of the Adoption Code, being §§10512-9 to 10512-25, inclusive.

Several motions were filed by counsel for Marshall Todhunter, all of which were overruled, and upon final hearing a decree of adoption was made, as prayed for in the application.

Motion for new trial was duly filed, overruled and final judgment entered. Within statutory time an appeal was filed, through which the pleadings were lodged in this court.

A very able and comprehensive brief was filed by counsel for Marshall Todhunter. Counsel for Fred Hysell, the petitioner and appellee, files no brief but relies entirely upon the opinion and reasoning of the Probate Court.

Six separately stated and numbered assignments of error are presented. We will consider these several assignments in the same order.

ASSIGNMENT No 1.

"The adoption statutes, §§10512-9 to 10512-25 GC, are unconstitutional and void in that they create arbitrary classifications which result in inequalities within the same general grouping of persons. Said statutes are uncertain, incomplete, indefinite and unenforceable."

Counsel for appellant, in his brief, starts with the premise that adoption proceedings were unknown to the common law and are purely a creature of statute. That being a graft on the common law they are to ▮▮▮▮▮▮▮ ▮ be strictly construed, closely interpreted and nothing should be left for intendment. The Probate Court is given exclusive jurisdiction in these proceedings. It follows that it has only the jurisdiction specifically conferred by the statutes in so far as those statutes are constitutional and enforceable.

We have no difficulty in accepting the above claimed principles as being the law of Ohio. While the assignment of error attacks the entire adoption code, yet in the brief we find particular emphasis placed against the provisions of §10512-19 GC.

There can be no question that this section is vague, uncertain and indefinite. It is the only section in the act which attempts to provide for the right of inheritance. The first few lines of this section are unfortunate, and therein is the substance which makes the section vague, indefinite and uncertain. The section starts out as follows:

"Except when such child is adopted by a stepfather or a stepmother according to law."

It is argued with persuasiveness that the quoted part of the section eliminates the remainder of the enactment from being operative when a child is adopted by a stepfather or a stepmother. The remaining portion of this section very fully and completely defines the duties and obligations of the adopting parent; the divesting of all legal rights and obligations on the part of the natural parent; the duties and obligations of the adopted child; provisions for inheritance, etc. If this section be so indefinite, uncertain and vague, or for any other reason be unconstitutional; or if under its terms it has no application to an adopting stepfather or stepmother, then the query arises as to whether it is so closely related to remaining sections in the act as to make all other sections unconstitutional and inoperative.

In January, 1939, we had before us in the case of **Hedges v Hedges**, Montgomery County, a question involving the operative effect of this section, 10512-19 GC.

In this Hedges case, just as in the instant case, there had been a divorce, custody of child granted to wife, her remarriage and adoption by the stepfather; a divorce by the wife from the second husband and thereafter an attempt to collect support money from the first husband, covering in part the years following the adoption.

In that case we determined that independent of §10512-19 GC, or any other similar legislation, the adoption by the stepfather created a ▮▮▮▮▮▮ ▮ status through which the adopting parent assumed all obligations for care and support of the adopted child, and, further, that through such adoption the natural parent was relieved of all legal obligations of support.

In arriving at our conclusions we recognized that adoption was unknown to the common law, was purely a creature of statute and required strict construction. We further stated that adoption was known to the civil law and the status created thereby was clearly defined and understood.

We still adhere to our announced conclusion.

So far as rights of inheritance are concerned, we do not think we need be disturbed. The right of inheritance

is not a vested right. The legislature may give, take away or modify such right at any time. The prospective right of inheritance of anyone, as it exists today, is not property; the right only accrues at the time of the death of the ancestor and is controlled by the laws as they then exist.

Applying this rule to the instant case, it follows that if and when the stepfather predeceases the adopted child, its rights of inheritance will be controlled by the law, as it then exists.

If it happens that the present §10512-19 GC, still exists in its present form and it should further be determined that no rights of inheritance are granted thereunder to the adopted child, it must then be further determined that none of the inheritence rights are taken away. If such should be the determination, then the adopted child's right of inheritance would be the same as though no adoption had been had.

While it is extremely doubtful if such a construction would be followed, yet considering the possibilities to the extremes urged by counsel for appellant, we still are able to say nothing has been taken away from the adopted child.

That §10512-19 GC, needs clarification through amendment is unquestionably true, but it is our conclusion that the section may be eliminated entirely as it controls the question before us.

We find no situation suggesting to our minds a sound reason why the entire act should be declared unconstitional. Neither do we declare §10512-19 unconstitutional for the reason that it is not necessarily involved.

## ASSIGNMENT No. 2

"Said statutes deprive the natural father of a minor child of his legal rights to the custody, care and control of said child without due process of law."

Counsel for appellant, in his brief, in support of Assignment No. 2, cites the following cases:

**In re Coons, 20 C. C. 47, 49, 50, 51;**
**In the Matter of Lutkehaus, 22 N. P. (N.S.)** 120, 122, 123;
Stapleton v Poyntner, 111 Ky. 264, 268;
46 Corpus Juris, 1226, 1283, 1284.

The pronouncements of the foregoing authorities were made under a different state of facts than those in the instant case, and for that reason we do not think them applicable.

In the Coons case, supra, the wife had been granted a divorce and custody of minor child.

By will she attempted to name a testamentary guardian through which the child would be placed in the control and custody of such guardian. The Supreme Court held that this could not be done, and we are in full accord with that decision.

The trial court's order placing the custody in the mother was necessarily personal, and after her death the rights of the father would be superior to that of any stranger. The attempted appointment by will of a testamentary guardian with right of control and custody, would not be authorized.

The case of Lutkehaus, supra, presents an almost identical question with that decided in the Coons case, supra. The mother had been granted a divorce and custody of the child, with an order against the father for its support. He complied only indifferently, later enlisted in the army, and upon his return home found that his former wife had died.

The child had spent a great amount of time with the maternal grandmother. In this case, the issues were whether the father could retrieve the custody from the grandmother. The court held that his right to the custody following the death of his wife, was superior to that of the grandmother.

We are in accord with this pronouncement.

In the Stapleton case, supra, it was determined that the widowed mother of a boy nine years old is entitled to his possession as against the paternal grandparents, with whom he had lived for several years, though they have fortune, character, kindliness and affection for the child and though he prefers to remain with them, the mother being a person of moral habits, without contagious or infectious diseases and of enough industry to reasonably assure the child from want.

The citations from 46 Corpus Juris, supra, deal entirely with the general proposition that the father is entitled to the earnings of his minor child.

The quoted text from the above volume of Corpus Juris does not deal with situations where the parents are divorced and custody of the child given to the mother, with husband charged with the duty to contribute towards support. Neither does it deal with situations under adoption.

We do not understand the law to be that where a minor child is given to the mother in a divorce action, that the father thereafter will be entitled to the earnings and wages of such child. As we understand the law, the mother, so long as she has the care, control and charge of such minor child, would be entitled to its earnings.

It may be claimed that through the adoption the order of the court granting custody has been abrogated. This is true, but §10512-11 GC, makes specific provision for this situation. This section in part reads as follows:

"In any adoption proceedings consents must be given to such adoption as follows: * * *

(d) By the parent awarded custody of the child by divorce decree, provided the court which granted such decree approves of such consent and because of such approval the jurisdiction of such court over the child shall thereupon cease."

We find no error as claimed under Assignment No. 2.

ASSIGNMENT No. 3.

"The procedure provided by said adoption statutes does not afford an orderly trial to the interested parties such as they are entitled to under the constitution and laws of Ohio."

Under this assignment of error attention is called to the procedural steps following the filing of petition for adoption.

Special emphasis is placed upon the provisions of §10512-10 GC, wherein there is provision for appointment of a next friend to make investigation and report to the court in writing, with a recommendation as to the proposed adoption and any other information concerning such child or the proposed home, as the court may require.

It is urged that such appointee making the investigation and report, acts in a degree upon hearsay evidence and in effect becomes a witness, without allowing right of cross-examination to appellant.

It must be kept in mind that the proceedings under the adoption code are not purely adversary.

In the case of Taylor v Bushnell, Executor, et, 29 O. C. A. 497, at the top of page 502, Judge Grant, delivering the opinion for the Court of Appeals of Cuyahoga County, made the following observation:

"It is to be observed that the adoption proceeding is in no just sense adverse in character although it can not be said to be in rem, strictly speaking; it is quasi in rem, or as the old books would say, sounding in rem."

A careful reading of the section providing for the appointment of some person as next friend, will disclose that the next friend in no sense is expected to favor the adoption at the time of the appointment. On the other hand, such appointee is expected to have in mind the best interests of the child and make such investigation as will enable the making of a report either favorable

or unfavorable to such adoption. It does not necessarily follow that the report, even favorable to adoption, is accepted as evidence. It seems to us it could more appropriately be classified as similar to a pleading of the next friend of the minor in any adversary proceeding.

While ordinarily a guardian ad litem files as the pleading a general denial, we do not understand that this is compulsory. Certainly the guardian ad litem representing a minor is within his rights in filing whatever form of pleading will be for the best interests of his temporary ward.

This procedure as applicable to adoption hearings throws out a protecting arm of the court, through which his appointee may make investigation independent of the evidence that may be presented.

It not infrequently happens that applications for adoption are not contested, and if no provision was made through which the court might make an independent investigation the evidence might be sufficient to justify an appointment, whereas the court's appointee may bring to his attention situations through which the application would be denied.

Furthermore, we think there is no merit in appellant's claim that he was denied the right of cross-examination. Had he desired to call the appointed next friend as a witness, no doubt the court would have granted full latitude in bringing out the scope of the inquiry, the correctness of the report and any further questions that would have been helpful in determining the propriety of the court's making an order for adoption.

We find no error as claimed under Assignment No. 3.

### ASSIGNMENT No. 4.

"The Probate Court erred in refusing evidence offered on behalf of the natural father and the minor child or, in the alternative, if said court was correct in his interpretation of said statutes then the statutes themselves precluded a full and complete hearing and are unconstitutional and void."

During the course of the hearing, counsel for appellant called the natural father as a witness and sought to make inquiry touching the father's character, affection for the child, willingness and ability to furnish it a good home, where it would have good care and attention, and so forth. The court refused to permit this line of inquiry, and we think acted correctly. Even granting everything that was claimed through the presentation of such evidence, what help would it lend to the court in determining petitioner's application for adoption? These matters, however, abundantly proven, would in no sense determine the question of the suitability of the petitioner as adopting parent. In no sense would it be proper to inject into the case a comparison between the natural father and the prospective adopting father. The custody of the child had been given to the mother by the Common Pleas Court having jurisdiction; this court gave its consent to the adoption by the foster father. The sole question for determination by the trial court was whether or not the interest and welfare of the child would be promoted through such adoption.

We find no error under Assignment No. 4.

Assignments Nos. 5 and 6 are not discussed in the brief, and assume thereby that the same are abandoned.

Finding no prejudicial error, the findings, orders and judgment of the trial court will be affirmed.

Costs of the proceeding in this court will be adjudged against the appellant.

GEIGER, PJ. & HORNBECK, J., concur.