IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF EMMA L. HOLIBAUGH, DECEASED.

Argued March 21, 1955—Decided April 25, 1955.

*Mr. Samuel Carotenuto* argued the cause for the caveators, George Walter Holibaugh and Frederick R. Burns (*Messrs. Applegate, Foster, Reussille & Cornwell,* attorneys).

*Mr. Theodore D. Parsons* argued the cause for the proponents, Alston Beekman, Jr., executor, and Riverview Hospital, *et al.*, beneficiaries under the alleged will of the deceased (*Messrs. Parsons, Labrecque, Canzona and Combs,* attorneys).

The opinion of the court was delivered by

HEHER, J.   The question raised here, *res nova* in New Jersey, is whether the descent and distribution of the property of an adopted adult is governed by the statute in force when the decree of adoption is entered or at the time of the adopted person's death.

On September 16, 1949, by a decree entered in the old Monmouth County Orphan's Court, a tribunal of competent jurisdiction, one John Bennett adopted Emma L. Holibaugh, then of the age of 56, pursuant to *R. S.* 1937, 2:39–1 *et seq.* The adoptive parent died March 2, 1950, leaving a will designating the adopted adult as the residuary devisee and legatee; and the latter died November 13, 1953, without issue, leaving among her effects a paper writing purporting to be her will and testament.   On November 24 ensuing, George Walter Holibaugh and Frederick R. Burns, the deceased's brother of the full blood and brother of the half blood, respectively, neither of whom the purported will designated as a beneficiary, interposed a caveat against probate of the instrument; and there was a motion for a "dismissal" of the caveat on the ground that the caveators "have no interest in the result" and so "no legal standing" to enter the caveat.   This, on the hypothesis that by force of *N. J. S.* 2A:22–3, effective January 1, 1952, supplanting *R. S.* 1937, 2:39–7, the caveators, even though of the blood and the natural next of kin of the deceased, have no right of inheri-

tance either from or through the deceased. Judge Simmill granted the motion, 33 *N. J. Super.* 232 (*Prob. Div.* 1954); and the caveators' appeal to the Appellate Division of the Superior Court is now here for decision on our own motion.

■ The issue is thus one of interest and capacity to sue and to invoke the judicial process to inquire into the testamentary sufficiency of the writing. A caveat is not maintainable by a mere volunteer; it is available only to one "who would be injured by the probate of the will" and as such is entitled to an opportunity to be heard on the question. *In re Myers' Estate*, 69 *N. J. Eq.* 793 (*E. & A.* 1906). See also *In re Van Doren's Estate*, 119 *N. J. Eq.* 80 (*Prerog.* 1935); *Middleditch v. Williams*, 47 *N. J. Eq.* 585 (*E. & A.* 1890); *In re Coursen's Will*, 4 *N. J. Eq.* 408 (*Prerog.* 1843).

The earlier statute, *R. S.* 2:39–7(*b*), effective when the adoption was decreed, is read as qualifying the natural next of kin of the deceased adopted adult as the inheritors of her intestate property and controlling as the statute in force when the decree of adoption was made, even though the later revision, in effect when the adopted person died, provides otherwise. By the latter it is ordained, *N. J. S.* 2A:22–3, that (a) the right of the person adopted, and of such persons as legally represent him on his death, to take and inherit intestate personal and real property from his natural parents and their kindred shall not be altered by the adoption, and (b) in "all other respects, all rights, privileges and obligations due from the natural parents to the person adopted and from the person adopted to them and all relations existing between such person and them shall be at an end, including the right of the natural parents and their kindred to take and inherit intestate personal and real property from and through the person adopted."

The argument is that (a) the "effect and consequences" of a decree of adoption made pursuant to *R. S.* 2:39–1 *et seq.* "were not changed by a subsequent repeal of that statute," citing *L.* 1951, *c.* 344, providing that "such repeal shall not affect any right now vested in any person pursuant to the provisions" of the title, "nor any remedy" in a pending

action or proceeding thereunder, and so the statute in effect at the time of the adoption determines the takers under the statutes relating to descent and distribution, and (b) the later statute "contains words of futurity and was intended to operate prospectively only" and "does not disturb the effect of prior adoptions." We find these points to be without substance.

Although known to the ancients of Greece and Rome, the right of adoption was unknown to the common law of England. *Ross v. Ross,* 129 *Mass.* 243 (*Sup. Jud. Ct.* 1880); *Carpenter v. Buffalo General Electric Co.,* 213 *N. Y.* 101, 106 *N. E.* 1026 (*Ct. App.* 1914); *Re George Walworth's Estate,* 85 *Vt.* 322, 82 *A.* 7, 37 *L. R. A., N. S.,* 849 (*Sup. Ct.* 1912); *In re Session's Estate,* 70 *Mich.* 297, 38 *N. W.* 249 (*Sup. Ct.* 1888); *Morse v. Osborne,* 75 *N. H.* 487, 77 *A.* 403, 30 *L. R. A., N. S.,* 914 (*Sup. Ct.* 1910). See also *Mobley v. Brown,* 151 *Okl.* 167, 2 *P. 2d* 1034, 83 *A. L. R.* 1015. Thus in this country the right itself and its legal consequences are of statutory origin, to serve a socio-familial policy of prime import. Adoption signifies the means by which one may become the child and heir of another. It is in its essence the relational status of parent and child having given legal attributes. Here, for instance, the adopting parent or parents must be at least 15 years older than the person to be adopted. *R. S.* 2:39–2; *N. J. S.* 2A:22–2. Under the Roman civil law, designed as it was to provide for the continuance of the rites of the family cult, the adopted child came under the *potestas* of his adoptive parents, and was rendered incapable of inheriting from relatives of his own blood. *Inst.* 1, 9, 12; *Dig.* 2, 1, 13, 1; *Dig.* 14, 1; *Dig.* 14, 4, 1, 4; *Co. Lit.* 7b, 237b. See *Ross v. Ross,* cited *supra.* In New Jersey the affiliation, once it is established, accords with the terms of the statute; and the legislative expression is to be assessed reasonably in keeping with the nature of the relation and the substance of the policy. The statute is concerned with relation and status and legal effects, all bearing on the essential public interest as well as individual right.

The later and current statute, in effect when the adopted person died, has reference in this regard to intestate succession or inheritance; and the succession to intestate property is in its very nature a rule *juris positivi*, according to the statute in force at the time of the intestate's death. The rules of descent and distribution are subject to change by the legislative authority as to property not already transmitted by the death of the owner. "Not until the ancestor dies is there any vested right in the heir." *Jefferson v. Fink*, 247 *U. S.* 288, 38 *S. Ct.* 516, 62 *L. Ed.* 1117 (1918). See also *Dawson's Lessee v. Godfrey*, 4 *Cranch.* 321, 2 *L. Ed.* 634 (1808); *Rossi v. Davis*, 345 *Mo.* 362, 133 *S. W. 2d* 363 (*Sup. Ct.* 1939), 125 *A. L. R.* 1111. No one is the heir of a living person. *Nemo est haeres viventis*. *Co. Lit.* 8a, 22b; *Broom, Max.* 522, 523; *Reese v. Stires*, 87 *N. J. Eq.* 32 (*Ch.* 1917). See *Barber v. Pittsburgh, Ft. W. & C. R. Co.*, 166 *U. S.* 83, 17 *S. Ct.* 488, 41 *L. Ed.* 925 (1897); *Tilden v. Green*, 130 *N. Y.* 29, 28 *N. E.* 880, 14 *L. R. A.* 33 (*Ct. App.* 1891). Succession to intestate property is generally at the will of the state. "The right to inherit property, or to receive it under testamentary disposition," is the "creation of statutory laws"; the Fourteenth Amendment does not deprive the states of the right to determine the limitations and restrictions upon the right to inherit property, but, "at most, can only be held to restrain such an exercise of power as would exclude the conception of judgment and discretion, and which would be so obviously arbitrary and unreasonable as to be beyond the pale of governmental authority." *Maxwell v. Bugbee*, 250 *U. S.* 525, 40 *S. Ct.* 2, 63 *L. Ed.* 1124 (1919); *Campbell v. California*, 200 *U. S.* 87, 26 *S. Ct.* 182, 50 *L. Ed.* 382, 388 (1906). See also *Magoun v. Illinois Trust & Savings Bank*, 170 *U. S.* 283, 18 *S. Ct.* 594, 42 *L. Ed.* 1037 (1898); *United States v. Perkins*, 163 *U. S.* 625, 16 *S. Ct.* 1073, 41 *L. Ed.* 287 (1896); *Nunnemacher v. State*, 129 *Wis.* 190, 108 *N. W.* 627, 19 *L. R. A., N. S.*, 121 (*Sup. Ct.* 1906).

Early canons of descent in England arising out of the feudal system of tenures and the duty of fealty ultimately

became a part of the common law for reasons of state policy; but the English statute of distribution, long recognized by historical scholars as founded on the 118th Novel of Justinian, it has lately been suggested, had its "logical and immediate origin in the sequence of ancient customs of English-speaking peoples, as those customs were established in the reign of Charles II; but more particularly in the ancient practice of the ecclesiastical courts in granting letters of administration. *Palmer v. Allicock*, 3 *Mod.* 58, 87 *Reprint* 37, 2 *Williams' Adm'rs & Ex'rs* (*Ed. of* 1838) 1060," customs and practices, it is said, that "in some respects go back \* \* \* to a time anterior to even the legislation of Justinian." *In re Youngs*, 73 *Misc.* 335, 132 *N. Y. S.* 689 (*Sur. Ct.* 1911). But however this may be, regulating the succession of inheritance is a legislative province. The lawgiver has plenary power over the devolution of the title and the distribution of the intestate's property.

And the statute speaks as of the time of the death of the owner. Rules of inheritance are the "creatures of the municipal or civil law, and, except as to rights already vested, may be changed and modified at pleasure. \* \* \* The Legislature has power to change the course of descent, and such change will operate instantly upon all estates which may subsequently descend. The law existing at the time of descent cast governs the right to inherit. A mere expectation of property in the future is not considered a vested right, and hence 'the rules of descent are held subject to change in their application to all estates not already passed to the heir by the death of the owner.' *Cooley, Const. Lim.* (6*th ed.*) 439." *Wunderle v. Wunderle*, 144 *Ill.* 40, 33 *N. E.* 195, 199, 19 *L. R. A.* 84 (*Sup. Ct.* 1893). See also *McCormick v. Hall*, 337 *Ill.* 232, 168 *N. E.* 900 (*Sup. Ct.* 1929), 66 *A. L. R.* 1062.

Presumably, the rules of descent and distribution are in accord with the intestate's intention, if he possessed testamentary capacity, for the statutory intestate disposition may be defeated by the will of the owner. Intestacy signifies the adoption of the statutory disposition. Compare *McCormick*

*v. Hall, supra,* where the will devised and bequeathed to the testator's wife that portion of his real and personal property allowed to her under the laws of the state, "the same as would be allowed to her provided" he "had died this life intestate."

The ruling principle was lately expounded in *McFadden v. McNorton,* 193 *Va.* 455, 69 *S. E. 2d* 445 (*Sup. Ct. App.* 1952). And it was given application in the earlier cases of *Kolb v. Ruhl's Adm'r,* 303 *Ky.* 604, 198 *S. W. 2d* 326 (*Ct. App.* 1946); *Blodgett v. Stowell,* 189 *Mass.* 142, 75 *N. E.* 138 (*Sup. Jud. Ct.* 1905); *Brooks Bank & Trust Co. v. Rorabacher,* 118 *Conn.* 202, 171 *A.* 655 (*Sup. Ct. Err.* 1934); *Anderson v. French,* 77 *N. H.* 509, 93 *A.* 1042, *L. R. A.* 1916A, 660 (*Sup. Ct.* 1915); *In re Rasmussen's Estate,* 114 *Minn.* 324, 131 *N. W.* 325 (*Sup. Ct.* 1911); *Fisher v. Robison,* 329 *Pa.* 305, 198 *A.* 81 (*Sup. Ct.* 1938); *In re Todhunter's Adoption,* 35 *N. E. 2d* 992 (*Ohio Ct. App.* 1941). The view *contra,* for which there is some case support, *e. g., Wilson v. Anderson,* 232 *N. C.* 212, 521, 59 *S. E. 2d* 836, 61 *S. E. 2d* 447 (*Sup. Ct.* 1950), 18 *A. L. R. 2d* 951, is at variance with the basic principles of our law and juridical policy.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice WACHENFELD—1