Goldie LA BOVE, Also Known as Gussie LaBove

v.

METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, and Francine Kasser, a Minor.

Francine Kasser, Through Her Guardian, Bucks County Bank and Trust Company, Appellant.

No. 12784.

United States Court of Appeals Third Circuit.

Argued Feb. 3, 1959.

Decided March 5, 1959.

234

W. Louis Bossle, Camden, N. J., for appellant.

William G. Bischoff, Camden, N. J. (Carroll, Taylor & Bischoff, Camden, N. J., on the brief), for plaintiff-respondent.

Before GOODRICH and STALEY, Circuit Judges, and STEEL, District Judge.

GOODRICH, Circuit Judge.

■ The question in this case is who is entitled to the proceeds of a federal employees' group life insurance policy. The contesting claimants are the insured's mother and his daughter who, prior to his death, had been adopted by his divorced wife's new husband on January 26, 1950. The adoption took place with the father's consent. The district court decided in favor of the mother, D.C.D.N.J.1958, 164 F.Supp. 808 and the daughter appeals.

The insured's name was Harry La-Bove. He was a federal employee and came under the Federal Employees'

Group Life Insurance Act, 5 U.S.C.A. §§ 2091–2103. The statute provides that payment is to be made to the person surviving at the date of the insured's death in several succeeding classes. 5 U.S.C.A. § 2093. The first has to do with the person designated by the insured. The insured in this instance did not designate anyone. The second in line is the surviving spouse of the insured. In this case he left no surviving spouse because he was divorced from his wife and had never remarried.

It is the third and fourth classes which create the controversy here. The third is "the child or children of such employee." The fourth is, in the absence of anybody taking under the first three, "the parents of such employee."

What makes the problem in this case is the adoption in New Jersey of Mr. LaBove's minor daughter by her step-father on January 26, 1950, to which the natural father consented. Does this adoption rule her out as the "child" of her natural father within the meaning of the relevant provision of the federal statute?

■ Although the rights arise from the provision of the United States statute, we take it that the applicable law to determine whether Francine Kasser is to be considered her natural father's child for the purpose involved here is to be settled by state law so far as applicable. "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. * * *. This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern." De Sylva v. Ballentine, 1956, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415.[1]

This general statement is borne out by the sixth provision of the section of

---

1. The similarity of the statutory language in De Sylva to the language in the statute at bar makes the Supreme Court's statement singularly appropriate here, although the very question in that case was whether a recognized illegitimate child was entitled to renew his natural father's copyright.

the statute above outlined. Reference is there made to "other next of kin of such employee entitled under the laws of domicile of such employee at the time of his death."[2]

The New Jersey adoption statute of 1954, which was in effect at the time of the death of Harry LaBove, is couched in very broad terms as shown in R.S. 9:3–17 under the heading "Public Policy."[3] More specifically, in 9:3–30, which describes the effect of adoption, the language is definite and far-reaching. The statute provides:

"A. The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationships, including rights of inheritance under the intestate laws of this State; * * *."[4]

■ Argument for the minor claimant suggests that the New Jersey legislature has endeavored to repeal the laws of biology, that such a result is impossible to achieve, and that it is unconstitutional to try it. We do not think the legislature is to have any such purpose ascribed to it. No doubt the statute cannot in all situations be applied literally. The relationship of blood between the natural parent and the natural child still persists, of course, despite any number of legislative words and acts of adoption. Thus, if the natural parent and the natural child should marry after the natural child has been adopted by somebody else, we cannot think that the marriage would be any less incestuous because of the adoption.[5] But the act quite obviously proposes to create so far as possible a place for the adopted child in the new family. And we think it equally clear that it is designed, so far as possible, to cut off the previous legal relationships of the adopted child with its natural parents who gave their consent to its adoption by others. The New Jersey statute provides that Francine, the natural child of Harry LaBove and the adopted child of Sidney Kasser, may not claim as a child a share in LaBove's estate if he had died intestate.[6] It tends strongly to prove, likewise, that she cannot prevail in this case.

■ The appellant argues, however, that the Act of 1954 is not applicable, that the Act of 1902[7] is applicable and that the 1954 statute preserved all vested rights under the 1902 law.[8] This point does not help us with this case. There is no vested right in a child to share in its parents' estate for we do not have forced heirship in this country. The child may be cut out of a will at the parents' pleasure. The child's claim upon intestate succession is determined by the law in force at the death of the parent as indeed are the rights of anybody else who takes from another by intestate succession.[9] So, indeed, is the common law as to the validity of a will; it speaks as of the date of the death of the testator. So here it is clear to us that the applicable New Jersey law is that in force at the time of the decedent's death on February 4, 1957, and that the 1954 statute gives or limits whatever rights Francine

2. 5 U.S.C.A. § 2093.

3. N.J.S.A. 9:3–17.

4. Id., 9:3–30.

5. Compare the situation where an adopting parent married the adopted child. State v. Lee, 1944, 196 Miss. 311, 17 So.2d 277, 151 A.L.R. 1143 (held not incest). Annotation 151 A.L.R. 1146.

6. See text at note 4 supra.

7. N.J.Stat.Ann. tit. 9:3, §§ 1–11 (1939). Under section 7 of the 1902 Act adop-tion did not prevent the adopted child from inheriting from his natural parent.

8. N.J.S.A. 9:3–34. This section repealed the earlier adoption statute, but stated that "nothing in this act shall be deemed to invalidate or otherwise affect * * * any right or duty vested * * * under any law heretofore in effect."

9. See In re Holibaugh's Will, 1955, 18 N.J. 229, 113 A.2d 654, 655–656, 52 A.L.R.2d 1222. Cf. In re McEwan's Estate, 1940, 128 N.J.Eq. 140, 15 A.2d 340, 344.

may have. She has no rights as a distributee of her father's estate and she has no rights as a "child" under his life insurance policy.[10]

The judgment of the district court will be affirmed.

10. While the learned district judge reached his conclusion with regret, the following facts tend to remove any such regret. LaBove went to live with his parents following his divorce. He left a will leaving his property to his mother stating in the will that he was conscious that he had a child. He consented to her adoption by her stepfather.