WHITE, Commissioner of Immigration, v. KWOCK SUE LUM.

(Circuit Court of Appeals, Ninth Circuit. August 6, 1923. As Modified on Rehearing, September 12, 1923.)

No. 3928.

1. Aliens ⬤➾23(1)—Resident citizen's adopted son, born in China, not entitled to enter the country.

Person of Chinese race, born in China, is not entitled to enter the United States, though adopted when two years old by resident citizen of Chinese extraction, especially where he is presumably a laborer, measurably mature, and apparently the head of a family.

2. Aliens ⬤➾18—Alien relatives of citizen may be excluded.

The power of Congress to exclude alien relatives of a citizen is not open to doubt.

3. Aliens ⬤➾32(8)—Bill of sale by father of child held insufficient to show adoption.

Proof that Chinese person residing in China executed bill of sale for a son to citizen of the United States of Chinese extraction, then residing in the United States *held* insufficient to show adoption, in absence of proof of law or custom of China in relation to adoption, even if adoption would justify admission.

4. Adoption ⬤➾1—No common law on the subject.

There is no common law of adoption in the United States, and each state makes its own regulations on the subject.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank H. Rudkin, Judge.

Habeas corpus by Kwock Sue Lum against Edward White, as Commissioner of Immigration for the Port of San Francisco. From a judgment discharging petitioner from custody (287 Fed. 363), defendant appeals. Reversed.

John T. Williams, U. S. Atty., and Ben F. Geis, Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

George A. McGowan, of San Francisco, Cal., for appellee.

Before GILBERT and MORROW, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge.    [1] By the judgment of the court below Kwock Sue Lum, a member of the Chinese race, was discharged from the custody of appellant, Edward White, who, as Commissioner of Immigration at the port of San Francisco, had denied him admission and was holding him for deportation. Kwock Sue Lum is the adopted son of Kwock Toy, a person of Chinese extraction, born in, and a resident citizen of, the United States, engaged in the restaurant business, and hence classified by the Immigration Department as a "laborer." In re Ah Yow (D. C.) 59 Fed. 561. United States v. Chung Ki Foon

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(D. C.) 83 Fed. 143. Upon his return in 1921 from a visit to his wife and family, who lived in China, Kwock Toy sought to bring with him a natural son and the appellee. Appellee, adopted when he was 2 years old, was then 17 years of age; he was married, and his wife, who remained in China, was an expectant mother. Kwock Toy and his natural son were permitted to enter, but, as already stated, appellee was denied admission. He does not claim citizenship by reason of his adoption, nor does he predicate his right to enter upon his own personal status. His reasoning is that by his adoption he and Kwock Toy became clothed with all the rights and privileges implied in the relation of father and minor child, including the right of dwelling together and of the intimate association of a common home.

Upon the precise subject there is no express provision of law, but as is well known, it has long been the settled policy of the government generally to limit Chinese immigration, and particularly to prohibit the entry and residence of Chinese laborers. Yee Won v. White, 256 U. S. 399, 41 Sup. Ct. 504, 65 L. Ed. 1012. In this case Yee Won, a resident of the United States, sought to have entered his wife and two young children, married and born in China during his temporary sojourn there. For the purposes of the decision his status was assumed to be that of "a Chinese person first permitted to enter the United States in 1901 as a resident merchant's minor son, but who subsequently acquired the status of a laborer, and as such entitled to remain." After explaining the considerations involved in, and distinguishing, United States v. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544, the court said:

"The treaty of 1894 (28 Stat. 1210) provided that 'the coming, except under the conditions hereinafter specified, of Chinese laborers to the United States shall be absolutely prohibited,' but this 'shall not apply to the return to the United States of any registered Chinese laborer who has a lawful wife, child, or parent in the United States, or property therein of the value of one thousand dollars, or debts of like amount due him and pending settlement.' Exclusion of all Chinese laborers, with certain definite, carefully guarded exceptions, was the manifest end in view, and for a long time the same design has characterized legislation by Congress. 'In the opinion of the government of the United States the coming of Chinese laborers to this country endangers the good order of certain localities within the territory thereof.' See Act of May 6, 1882, c. 126, 22 Stat. 58; Act of July 5, 1884, c. 220, 23 Stat. 115; Act of September 13, 1888, c. 1015, 25 Stat 476, 477; Act of May 5, 1892, c. 60, 27 Stat. 25; Act of November 3, 1893, c. 14, 28 Stat. 7.

"The special object of the treaty of 1894 was to secure assent of China to the limitation or suspension by the United States of immigration or residence of Chinese laborers. Prior to that time rather drastic legislation had undertaken to limit such immigration and residence. These statutes were 're-enacted, extended, and continued, without modification, limitation, or condition' by Act of April 29, 1902, c. 641, 32 Stat. 176, as amended by Act of April 27, 1904, c. 1630, § 5, 33 Stat. 428, and are now in force notwithstanding the treaty of 1894 expired in 1904. Hong Wing v. United States, 142 Fed. Rep. 128. This well-defined purpose of Congress would be impeded rather than facilitated by permitting entry of the wives and minor children of Chinamen who first came after the ratification of the treaty, as members of an exempt class, and later assumed the status of laborers. We think our statutes exclude all Chinese persons belonging to the class

defined as laborers except those specifically and definitely exempted, and there is no such exemption of a resident laborer's wife and minor children."

[2] The admission of appellee would undoubtedly constitute a clear exception to this well-defined national purpose, not only because of the status of his adoptive father, but because presumably he is in fact a laborer. While technically under the laws of this country still a minor, he is measurably mature, and apparently with the sanction of the laws of his own country he is the head of a family. It is not pretended that he is a merchant, or that he belongs to any of the exempt classes, and to admit him would be to add to the number of Chinese laborers in the United States. As already suggested, if an exception be made in his favor, it must be because of the citizenship of his adoptive father. The power to exclude alien relatives of a citizen is not open to doubt. In Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165, a member of an excluded class was deported, though the wife of a citizen.

It is then a question of legislative intent, and, no applicable exception having been expressed, upon what ground is one to be presumed or implied? True, we may take cognizance of the natural desire of father and child generally to live in close association one with the other; but even that consideration is much weakened in the instant case. Appellee was born and reared and married in China, all while the adoptive father continued to reside in the United States. Under such circumstances, now to deny admission would not appear to be so harsh and unnatural as to raise the presumption that Congress could not have intended such a result. In the Yee Won Case, supra, the petitioner was lawfully in this country. While the source of the right to reside here was different from that of the appellee's adoptive father, still it was a right, and as such was entitled to be respected and protected. The relationship between him and his wife and young children, whom he sought to bring in, in order that they might reside with him, may be assumed to be quite as tender and sacred as that between appellee and his adoptive father. But that consideration was not thought to warrant reading an exception into the general prohibition of the law; the court saying:

"Our statutes exclude all Chinese persons belonging to the class defined as laborers, except those specifically and definitely exempted, and there is no such exemption of a resident laborer's wife and minor children."

If we exclude the wife and children of Yee Won, a lawful resident, there would seem to be no possible ground for the admission of appellee's family. To admit him, therefore, would be to give heed to his supposed desire to be with his adoptive father, and to disregard the more tender ties binding him to his lawful wife and the infant child of his blood. We cannot think that the citizenship of the adoptive father warrants a construction attended with such a result.

The judgment is reversed.

GILBERT, Circuit Judge (concurring). [3] In addition to the grounds for reversal presented in the opinion of Judge DIETRICH

I submit the following: The record is insufficient to show that the appellee has a recognizable status as the adopted son of Kwock Toy. There is no evidence of the law or social custom of China in relation to adoption. The only evidence in the case is a bill of sale made at a time when the appellee was 3 years of age. It was executed ostensibly by his father, who, according to its recitals, was a widower and was in urgent need of money with which to remarry, and, in consideration of $309 paid to him, executed the bill of sale of his second son to Kwock Toy. It contains the further recital that the appellee was delivered to Kwock Toy and his wife, Wong Shee, "to take care and nourish and to become their adopted son and successor to their ancestors." Kwock Toy was not in China at that time. He was an American citizen residing in the United States, and he at no time resided in China. If the adoption law and custom of China is similar to that of other countries where adoption is recognized, it may be seriously questioned whether a nonresident alien was qualified to become an adoptive parent of a native-born son of a Chinese subject.

[4] Adoption was never recognized by the English common law, and there is no common law of adoption in the United States. Each state makes its own regulation on the subject, and the regulations differ. If the appellee is to be permitted to enter the United States upon the showing which is here made, there is nothing to prevent American citizens from buying minor children in China by instruments such as that which is here involved, and bringing such aliens into the United States on the ground that they are the adopted children of American citizens.

MORROW, Circuit Judge (concurring). I concur in the opinion of Judge DIETRICH, and also in the additional grounds stated in the concurring opinion of Judge GILBERT.