**UNITED STATES ex rel. FEMINA v. CURRAN, Commissioner of Immigration.**

(Circuit Court of Appeals, Second Circuit. June 1, 1926.)

No. 342.

**1. Aliens ⬧⇒53.**

Under Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), immigrant bringing female into country for purpose of retaining her as, or making her, his mistress, is subject to deportation.

**2. Habeas corpus ⬧⇒92(1).**

If there is any evidence to sustain department's finding and order of deportation, courts should not weigh evidence contra or interfere by habeas corpus.

**3. Aliens ⬧⇒53.**

Evidence that alien brought another into country for purpose of retaining her as, or making her, his mistress, *held* to warrant deportation under Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b).

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding by the United States, on the relation of Vincenzo Della Femina, for writ of habeas corpus, to be directed against Henry H. Curran, as Commissioner of Immigration. From an order discharging the relator, the Commissioner appeals. Writ discharged, and relator remanded.

Relator is an Italian of mature years, who, after serving in the Italian army through the World War came to this country in August, 1919. He left behind him a wife and four children in the southern portion of Italy, which was his native land.

During the war, and while stationed in northern Italy, he was accused of adultery with the wife of one Faccio. With this offense he was charged in the Italian courts, and was acquitted; but Faccio thereafter refused to live with his wife, and that wife came with the relator to this country on the same ship that carried him. Mrs. Faccio's certificate of admission stated that she was bound for the home of the relator's father, who already resided in New York, and in the certificate that father was described as the woman's "godfather." The fact was that the father did not know the woman at all.

She did go to the father's home, and there rendered domestic service for some two or three months, and then left to seek other employment.

Relator's wife heard that her husband had gone to America with (as she was informed) his mistress, and came herself, with all her children, to New York in December, 1919. She was met, not by her husband, the relator, but by his father (dead before the hearings herein), who provided for the immediate wants of his daughter-in-law and grandchildren, and seems to have tried to make some arrangement between husband and wife.

This effort was not successful, and the wife herself brought proceedings against relator in the courts of New York, and obtained an order requiring him to pay a certain weekly sum for her support and that of the two female children, while he was intrusted with the care of the two boys, then aged respectively 14 and 10.

His wife then removed to Cambridge, Mass., where she had relations, and seems shortly to have become quite successful in earning a livelihood.

Relator had joined the business conducted by his father, and on taking charge of his two sons took them to live in an apartment, where the housekeeper was a woman whom the elder of the two boys described as Mrs. Faccio in letters to his mother in Cambridge. This lad's letters frankly described his father as living with his mistress in an adulterous relation.

This brought the relator's wife to New York, where she first visited the apartment where her sons were, accompanied by a police officer, and took away the boys; she then made formal complaint about her husband and his alleged mistress to the immigration authorities. Out of this affair grew the present proceeding, which is in substance an effort to deport the relator on the ground that in the language of section 3 of the Immigration Act of Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), he is in the class of "persons who directly or indirectly procure or attempt to procure or import * * * persons for the purpose of prostitution or for any other immoral purpose"; in other words, that he brought into this country on the same ship with himself a woman with whom he intended to cohabit, and did subsequently cohabit in the city of New York.

Of the testimony contained in this voluminous record it is enough to say that the evidence collected by the extreme diligence of the agents of the Department of Labor, before the relator's wife discovered that the legal machinery she had herself put in motion meant the removal of her husband from the United States and the probable cessation of her weekly quasi alimony, amply support the charge as made.

After the scene created by the eruption of the wife from Cambridge into the New York apartment, where she found her sons, Mrs. Faccio disappeared; so she has never testified, and apparently cannot be found for purposes of deportation.

Thereupon the wife, the eldest son, and several other witnesses, who had testified quite fully as to the apparent relations between relator and Mrs. Faccio, appeared, on various occasions, before various representatives of the Department of Labor, and either recanted what they had said, or pointed out that they had probably been mistaken in their original statements of fact.

After very prolonged hearings the proper authorities of the Department of Labor held the charge against the relator proven, and ordered his deportation. Thereupon this writ was taken out, and the relator discharged, on the ground that the record did not "disclose any real evidence of any fact, as distinguished from suspicion, that the alien [Mrs. 'Faccio] imported by the petitioner [relator] ever committed an immoral act, nor any real evidence of any facts from which the inference reasonably can be drawn that the [relator] imported the alien [Mrs. 'Faccio] for an immoral purpose." Whereupon the Commissioner took this appeal.

Emory R. Buckner, U. S. Atty., of New York City (Samuel C. Coleman, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Frank J. Rinaldi, of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Whether it is or is not a somewhat hypocritical assumption of moral superiority to forbid the entry into this country of aliens with lax views of the marriage vow, and privately addicted to freedom in sexual relations, is a point not without interest, but quite immaterial to such a case as this.

[1] The language above quoted from the Immigration Act has been in similar statutes for nearly 20 years; it was thoroughly considered in United States v. Bitty, 208 U. S. 393, 28 S. Ct. 396, 52 L. Ed. 543, and held to cover the bringing in by a male immigrant of his mistress. The general subject of construction of the phrase "other immoral purpose," when used in conjunction with the word "prostitution," was further considered in Caminetti v. United States, 242 U. S. 470,

37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168. Result is that, if this relator did bring into this country Mrs. Faccio for the purpose of retaining her as, or making her, his mistress, he is subject to deportation.

[2] The simple question before us is whether there was enough testimony, not necessarily offered, obtained, or received in accordance with what are called the rules of evidence, but fairly and honestly gotten and of probative force, to enable the Department of Labor to find the ultimate necessary fact. If there was such testimony, it is not for the courts to weigh the evidence contra, and decide as to the weight thereof, or as to the credibility of this or that witness, but, in the absence of any error in departmental construction of the language of the act, to refuse to interfere by habeas corpus. Diamond's Case (C. C. A.) 266 F. 34; Morrell v. Baker (C. C. A.) 270 F. 577; Palermo's Case (C. C. A.) 296 F. 345; Bieloszycka's Case (C. C. A.) 3 F.(2d) 551.

[3] We would render no aid in the administration of this act by dwelling on the details, unsavory in every way, of the evidence herein. It is enough to say, as we have above indicated, that, while relator's wife aided as she had instigated investigation, the evidence was direct, probable, and convincing; and that the later testimony contra consisted of statements improbable in themselves, and accompanied at times by shameless assertions of earlier false statements by the witness. These later assertions did not withstand cross-examination well. The board of inquiry was not bound to believe what was last said. Result is we hold that there was evidence sufficient before the department to justify the order made.

Let the writ be discharged, and relator remanded.