## LEWIS ex rel. LAI THUEY LEM v. JOHNSON, Commissioner of Immigration.

(Circuit Court of Appeals, First Circuit. December 18, 1926.)

No. 1931.

**1. Aliens ☾⟳54(10)—Hearing before Immigration boards held unfair and prejudicial, requiring trial of habeas corpus case on merits.**

Hearing before immigration boards on application of alleged foreign-born son of native-born citizen for admission *held* to have been unfair and prejudicial to rights of applicant, requiring trial on merits in habeas corpus proceeding.

**2. Aliens ☾⟳54(7)—If hearsay evidence is used, alien applicant for admission must have opportunity to explain or rebut it.**

Although hearsay evidence may be used on application for admission before immigration authorities, applicant must have opportunity to explain or rebut it.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Habeas corpus by William H. Lewis, on the relation of Lai Thuey Lem, against John P. Johnson, Commissioner of Immigration. Decree dismissing the writ, and petitioner appeals. Reversed and remanded.

William H. Lewis, of Boston, Mass., for appellant.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This habeas corpus case presents the familiar question whether the applicant is the foreign-born son of a native-born citizen. The court below dismissed the writ without opinion, apparently refusing to hear any evidence outside the record before the immigration authorities.

The applicant, Lai Thuey Lem, arrived in Boston in April, 1924. He claimed admission as the son of Lai Sing Woo, presenting an affidavit, purporting to be that of Lai Sing Woo, to the effect that the affiant was a native citizen of the United States (referred to in New York file No. 3625/980), and that the photograph attached to the affidavit was that of his son Lai Thuey Lem.

At the hearing in Boston, the applicant's testimony was taken before an inspector. The examination ran along the usual lines—detailed evidence as to the relationship, the number of houses and the occupants thereof in the applicant's native village, etc.

The testimony of the alleged father, Lai Sing Woo, and an alleged older brother, Lai Poy Lum, was taken in New York before an inspector. The alleged father testified that he was born in 1880 in South Dakota, went to China when four or five years old returning via Vancouver in 1903; that he was arrested, taken before a commissioner at Plattsburg, and there given a discharge certificate, setting forth that he was a citizen of the United States; that in 1921 he obtained a returning merchant's certificate, issued by the New York office, and approved by the Boston office; that in August, 1923, he returned via Montreal, and then brought with him his son, Lai Poy Lum, who was then admitted as his son.

It follows that, if he was really the holder and the original of the photographs attached to at least two of these documents, he had on three occasions (including the admission of his son, on four occasions) been recognized by the immigration authorities as a citizen of the United States.

The testimony of Lai Poy Lum (admitted as his son) accorded.

The case in its general aspect is thus fairly characterized in the opinion of the Board of Review:

"In most respects, the testimony of all is consistent. However, several discrepancies have developed."

This generally persuasive aspect of the case, made by three witnesses and the former records, is important in considering the grounds upon which the applicant was excluded.

After the evidence of the alleged father and the alleged brother was taken in New York, the applicant, on May 28, 1924, gave further brief testimony before the Board of Special Inquiry at Boston. At the close of that hearing, the chairman read, and made a part of the record, a letter, dated New York, May 22, 1924, addressed to the Commissioner of Immigration, Boston, and signed by A. W. Brough, acting inspector in charge. In this letter, Brough set forth that he was returning identification records and forwarding the transcript of statements of Lai Sing Woo, alleged father, and Lai Poi Lem, prior landed alleged brother, together with a letter of one Lie King, as follows:

"New York May 5/24

"'Dear Sir: In regard to the case of Yee Thuey Lew Son of Yee Sing Who. That was not his son. Yee Sing Who claims he is a citizen of the United States. That paper was not his the man is dead and that paper belong to that wo his brother so he youes it for himself.

"Yours                          Lie King."

(Received May 6, 1924.)

His letter proceeds:

" * * * The information contained in the letter of Lie King is to the effect that your applicant is not the son of his alleged father and that the alleged father is using a court discharge of a deceased brother. The alleged father not being available to the board, it is thought an expression as to how he compares with the photograph attached to the Corbin court discharge, which appears in Montreal file 11291/148, would be desired.

"In this connection I have to state that both the investigating officer and the writer made a careful comparison of the alleged father appearing here with the said photograph, and it is the opinion of the writer that the photograph of Sing Woo appearing on the Corbin discharge certificate, dated July 30, 1903, and contained in the Montreal file 11291/148, is not the photograph of the alleged father, Sing Woo, who appears here in the case of your present applicant. By reference to the photograph attached to said discharge certificate, there appears to be a flesh mole between the eyebrows, which does not appear on the alleged father. There was a small dot over the left eyebrow on the photograph attached to the discharge certificate, and which corresponded with the flesh mole of the alleged father, Sing Woo, who appeared here. This dot was easily removed by the investigating officer after the application of a damp cloth. The ear formation, as shown in the photograph on the discharge certificate, does not agree with that of the Sing Woo appearing here.

"There are other marks that can be discerned by the use of a magnifying glass on the photograph attached to the discharge certificate, which do not appear on the face of the Sing Woo, alleged father of your applicant. On the other hand, the alleged father has other distinct pit scars, which would show on an unretouched photograph; however, he explains that these marks are a result of chicken pox, which he was afflicted with at a time subsequent to the date of the Corbin discharge certificate, and that prior to his being so afflicted his face bore no marks or pit scars.

"It would appear that the statement contained in the letter of Lie King, to the effect that the present alleged father of your applicant is not the rightful holder of the discharge certificate issued by United States Commissioner Corbin to one Sin Woo, seems to be borne out by the comparison herein set forth.

"A. W. Brough, Acting Inspector in Charge."

Thereupon, the Board of Special Inquiry made a "not satisfied" decision, and gave the applicant the usual time for submitting further evidence. But (and this is important) there is nothing to indicate that the report of Inspector Brough, containing the Lie King letter and the opinion evidence of himself and apparently another "investigating officer"—to the effect that Lai° Sing Woo was not the real original of the photographs attached to the identifying documents—was ever brought to the attention of the applicant or of his witnesses.

No\ further evidence was offered. The Board of Special Inquiry, adhering to its original views, excluded the applicant on the double ground that neither the citizenship of the alleged father nor his relationship had been reasonably established.

Otherwise put, the board really found that the statements in the letter of Lie King were true—that the alleged father, who appeared and testified under the name of Lai Sing Woo, was not the original of the photographs or the real owner of the identifying documents. On appeal to the Board of Review, the same result was reached. In the report of that board there is some discussion of certain minor discrepancies; but it is clear enough that the case turned upon the identity of the alleged father with the photographs and the identifying documents above referred to. In the opinion it is stated:

"It is plainly apparent that the alleged father is not the Sing Woo who was discharged in 1903 by United States Commissioner John Corbin. In this connection it may be properly mentioned that a letter was received by the Chinese inspector in charge at New York from a Chinese in New York who signed his name Lie King, and who stated in his letter that this man was not the man whose 'paper' he presents, but that man's brother; that the man who owned the said paper is dead. He further stated that the present applicant is not the son of the alleged father.

"This letter is, of course, not evidence, and can be given no evidence in deciding the case. So long as the alleged father attempts to prove his citizenship by the documentary evidence which he has presented, the decision with regard thereto must be based entirely on whether or not his photograph and his testimony are such as to show that he is identical with the man discharged."

But, in spite of this caveat, a careful study of the entire record leaves us convinced that the real grounds for the decision were the letter (really anonymous, although having an

apparent signature) and the expert opinion of Brough and another unnamed "investigating official" as to the identity of the true Lai Sing Woo and the photographs. The other discrepancies stated in the opinion are slight or negligible.

[1] The result is that the applicant was excluded, on a finding which involved the grossest perjury and fraud by all three of the witnesses—a very serious case, calling for criminal prosecution. But, as we read the record, none of these witnesses seem to have had knowledge of the real basis of this finding against their honesty and reliability. It was entirely irregular and illegal thus to use Lie King's letter and the opinion of Brough and another "investigating official" as to the doctoring of the photographs with relation to the mole between the eyebrows of the alleged father. The case falls under well-settled principles.

[2] While hearsay evidence may be used (Tang Tun v. Edsell, 223 U. S. 673, 32 S. Ct. 359, 56 L. Ed. 606), the applicant must have an opportunity to explain or rebut it. See Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010.

As the case involves the question of citizenship, and as the hearing before the administrative boards was unfair and prejudicial to the rights of the applicant, the case should have been tried in the court below on its merits. Chin Yow v. United States, 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369; Kwock Jan Fat v. White, 253 U. S. 454, 465, 40 S. Ct. 566, 64 L. Ed. 1010. Compare Ng Fung Ho v. White, 259 U. S. 276, 282, 42 S. Ct. 492, 66 L. Ed. 938.

The case must be remanded to the District Court for trial on the merits.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings, not inconsistent with this opinion.