**KOSTENOWCZYK v. NAGLE, Com'r of Immigration.**

Circuit Court of Appeals, Ninth Circuit. April 18, 1927.

No. 4975.

1. **Aliens ⟷54(9)—Evidence held to warrant deportation for importing woman for immoral purposes (Immigration Act 1917, § 3 [Comp. St. § 4289¼b]).**

Evidence *held* to sustain an order of deportation on the ground of importing a woman for immoral purposes, under Immigration Act 1917, § 3 (Comp. St. § 4289¼b).

2. **Aliens ⟷54(13)—Warrant for deportation need not have particularity of indictment.**

A warrant of arrest for deportation need not have the formality and particularity of an indictment, but is sufficient if it gives defendant adequate information of the act that brings him within the excluded class and to enable him to offer testimony to refute the same at a hearing.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Petition of Jozef Kostenowczyk against John D. Nagle, Commissioner of Immigration at the port of San Francisco, for writ of habeas corpus. From an order denying the writ, petitioner appeals. Affirmed.

Clarence A. Linn and Robert Duncan, both of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. The petitioner, appellant here, was ordered deported by warrant of the Secretary of Labor, wherein, after reciting that, from proof submitted after due hearing, he continued: "I have become satisfied that the alien * * * who landed at the port of San Francisco * * * on the 18th day of November, 1916, has been found in the United States in violation of the Immigration Act of February 5, 1917 (Comp. St. §§ 959, 960, 4289¼a et seq.), to wit: That he imported or attempted to import a person for immoral purposes, and that he has been convicted or admits the commission of a felony or other crime or misdemeanor involving moral turpitude, to wit, adultery, prior to entry into the United States."

The principal assignment raises the question of the sufficiency of the evidence relat-

ing to the importation for immoral purposes. In 1909 Kostenowczyk was married to Leokadia Weszork in Poland, and was the father of three children by her. In 1915 he left his wife and children in Poland and went to Kahrof, Russia. There he met Stansilofer Halaburda and cohabited with her for several months. The two then went to Irkutsk, where they continued to live together for six months. In 1916 they planned to come to the United States, the arrangement being for the woman to come first and the man to follow, and to live together in marital relation in the United States. In carrying out this arrangement, Kostenowczyk bought the woman's ticket to the place in Siberia from which she departed for the United States about September 15, 1916. She traveled as an unmarried woman under her maiden name. In November, appellant, under an assumed name, arrived in San Francisco, where in about two weeks the woman joined him and they resumed cohabitation. Some time in August, 1919, the woman wanted Kostenowczyk to marry her. He refused, and declined to return to her a ring that she had given him. Thereupon she complained to the police, who arrested him and put him in jail for a day. A day or two later he procured a marriage license, and they went through a marriage ceremony before a judge in San Francisco, and have continued living together.

[1] There were some differences in the testimony as to whether the money for the woman's transportation from the place abroad from whence she sailed to the United States was her own, earned by work she did in a store while she was living with appellant, or was from a common fund belonging to the two. But, as there was ample evidence supporting the finding of the immigration authorities that the man paid the passage of the woman to the United States with the immoral purpose in mind, it is not for the court to review the finding. The result is that the appellant is subject to deportation under section 3 of the Immigration Act of February 5, 1917 (Comp. St. 1918, Ann. Supp. 1919, § 4289¼b), which authorizes deportation of persons who directly or indirectly procure, or attempt to procure, or import persons for the purpose of prostitution, or for any other immoral purpose. United States v. Bitty, 208 U. S. 393; 28 S. Ct. 396, 52 L. Ed. 543; United States v. Curran (C. C. A.) 12 F.(2d) 639.

[2] Petitioner asserts that the warrant of deportation, dated April 19, 1926, is fatally defective, in that it is not stated therein whether there was an importation of, or only an attempt to import, the woman, and that the woman is not named, and that there is no immoral purpose designated or defined. The record is that, before the warrant of arrest was issued on August 12, 1925, statements of the man and the woman were taken by an immigration officer. Thereafter warrant in the language of the statute was issued. When the matter was brought on for hearing, the warrant was read to the appellant, the allegations therein were explained to him, he inspected the warrant and evidence upon which it was issued, and on October 28, 1925, before the main hearing was had, he was told of his right to retain counsel. Thereafter he was represented by an attorney. In due course the board of review made the findings already referred to, and, after approval by the Secretary, warrant of deportation was issued. Appellant has not been injured, for a warrant of arrest for deportation of an alien need not have the formality and particularity of an indictment, but is sufficient if it gives defendant adequate information of the act that brings him within the excluded class and to enable him to offer testimony to refute the same at a hearing. United States v. Uhl (C. C. A.) 211 F. 628; Guiney v. Bonham (C. C. A.) 261 F. 582; Chun Shee v. Nagle (C. C. A.) 9 F.(2d) 342.

It is true that no interpreter was present at the preliminary hearing, but appellant was asked several times whether he understood English and could proceed without the aid of an interpreter. He replied that he understood English; that he had been in the United States eight years and did not need an interpreter. Under the circumstances, there was no unfairness in the proceeding.

It is unsound to say that there was a valid common-law marriage between petitioner and the woman. The relationship of the two was meretricious immediately before the woman left the foreign country, and by a preconcerted plan was to be, and was, meretricious upon their reunion in the United States. Petitioner well knew that his marriage was in force, and that it was a complete obstacle to marriage with another woman.

The judgment is affirmed.