## TILLINGHAST, Commissioner of Immigration, v. CHIN MON ex rel. CHIN YUEN.

Circuit Court of Appeals, First Circuit.
March 26, 1928.

No. 2194.

1. Aliens ⊕⊐25—Adopted son of native-born American citizen of Chinese race is admissible if adopted before January 1, 1924; "child" (Immigration Act 1924, § 28 [8 USCA § 224]).

Adopted son of native-born American citizen of Chinese race is admissible if adoption took place before January 1, 1924, since Congress in Immigration Act May 26, 1924, § 28 (8 USCA § 224), defined "child" as including adopted child, provided adoption took place before January 1, 1924, and such definition is not

limited to definition of word as employed in such act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Child—Children (In Statutes).]

**2. Appeal and error ⚖⇒731(5)—Sufficiency of evidence to show applicant was adopted son of citizen held presented by assignment of error in ruling in habeas corpus proceeding that applicant was unlawfully restrained of liberty.**

On appeal from decision in habeas corpus proceeding in which Chinese claimed admission as adopted son of citizen, question of sufficiency of evidence to show applicant was such adopted son *held*, to be presented by assignment that court erred in ruling that applicant was unlawfully restrained of liberty and in ordering discharge from custody.

**3. Appeal and error ⚖⇒719(6)—On appeal in habeas corpus proceeding by Chinese claiming admission as adopted son of citizen, insufficiency of evidence to show he was such adopted son is error which will be noticed without assignment.**

On appeal by Commissioner of Immigration from decision in habeas corpus proceeding in which Chinese claimed admission as adopted son of citizen, insufficiency of evidence to show applicant was such adopted son is plain error of which court may take notice, though not assigned.

**4. Aliens ⚖⇒32(8)—Evidence held insufficient to show Chinese applicant was adopted son of citizen.**

On appeal in habeas corpus proceeding by Chinese claiming admission as adopted son of citizen, evidence *held*, insufficient to show that applicant was such adopted son.

**5. Aliens ⚖⇒32(5)—Chinese claiming right to enter as adopted son of citizen must show Chinese adoption law.**

Where Chinese claims right to admission as adopted son of citizen, absence of evidence showing law of China on question of adoption is alone sufficient to warrant exclusion.

Anderson and Bingham, Circuit Judges, dissenting in part.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Petition for habeas corpus by Chin Mon, on the relation of Chin Yuen, against Anna C. M. Tillinghast, United States Commissioner of Immigration. The court directed that the writ be issued, and entered an order discharging the applicant from custody, and respondent appeals. Reversed and remanded, with directions.

John V. Spaulding, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Benjamin Dellheim, of Boston, Mass. (Everett Flint Damon, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from an order of the District Court for Massachusetts in a habeas corpus case.

The applicant, Chin Yuen Yin, 16 years of age in 1927, seeks admission to the country on the ground that he is the adopted son of Chin Mon, whose citizenship is conceded, and that he was adopted prior to January 1, 1924.

The Board of Special Inquiry, being of the opinion that the applicant had not reasonably shown that he was either a blood or adopted son of Chin Mon, entered an excluding order. From this order an appeal was taken to the Secretary of Labor, and the case was heard before the Board of Review. This Board found that the applicant was adopted by Chin Mon as his son prior to January 1, 1924, but ruled that as he was an alien of the Chinese race, was ineligible to citizenship, and did not come within any of the exceptions contained in the act of 1924, he should be excluded; and, on the recommendation of the Board, the Secretary of Labor ordered his appeal dismissed. The applicant then petitioned the District Court for a writ of habeas corpus. The court directed that the writ be issued, and later entered an order discharging the applicant from custody. No opinion was given or grounds stated for the action thus taken. It is from this order that the present appeal is prosecuted.

While it is wholly conjectural what the ground was upon which the court took jurisdiction of the case and precisely what questions of fact, if any, it determined, it is probable that it assumed that the findings of the Board of Review as to the adoption of Chin Yuen Yin were correct; that its ruling of law, based on those findings was erroneous, and because of this took jurisdiction of the case and ordered the applicant discharged from custody. The evidence before the court was that introduced before the immigration authorities, and is reproduced in full in the record now before us.

There are only two questions in the case. The first is whether the District Court, on the evidence before it was warranted in assuming or finding that Chin Yuen Yin was the son of Chin Mon by adoption prior to January 1, 1924; and, second, if such was the fact, whether it erred in ruling that

Chin Yuen Yin was entitled to enter the country.

As to the latter question, I am of the opinion that the court below erred in its ruling. The Immigration Act of May 26, 1924 (43 Stats. L. p. 161), which took effect, so far as the provisions with which we are here concerned, on July 1, 1924 (section 31 (a) [Comp. St. § 4289¾n]), provides in section 13 (c) (8 USCA § 213) as follows:

"No alien ineligible to citizenship shall be admitted to the United States unless such alien (1) is admissible as a non quota immigrant under the provisions of subdivision (b), (d), or (e) of sec. 4, or (2) is the wife, or the unmarried child under 18 years of age, of an immigrant admissible under such subdivision (d), and is accompanying or following to join him, or (3) is not an immigrant as defined in section 3."

It must be, and virtually is, conceded that Chin Yuen Yin, a Chinese person of foreign birth, is ineligible to citizenship and does not fall within any of the exceptions specified in this section. Subdivision (b) refers to immigrants previously lawfully admitted, returning from a temporary visit abroad; subdivision (d) refers to an immigrant who is and has, for at least two years, been following the vocation of a minister or a professor and is asking admission for the purpose of carrying on his calling; subdivision (e) refers to an immigrant who is a student coming here solely to study; and subdivision (2) refers to the wife or the unmarried child under 18 years of age, of an immigrant minister or professor referred to under subdivision (d).

[1] The contention of the applicant is, or would appear to be, that Congress, in defining certain terms in the Immigration Act of May 26, 1924 (8 USCA § 224), defined the word "child" as including an adopted child, provided adoption took place before January 1, 1924; that the definition is one of general application and not limited to a definition of the word as employed in the Immigration Act of 1924; and, this being true, and an adopted son of a native-born American citizen of the Chinese race being admissible to the country prior to the act of 1924, the applicant is admissible. Johnson v. Shue Hong (C. C. A.) 300 F. 89.

The difficulty, as it seems to me, with this contention, is that it assumes that the definition of the word "child," as found in section 28, subd. (m) (8 USCA § 224), is one of general application and not limited to defin-

ing that word where it is found in the act of 1924. In section 28 it says:

"Sec. 28. *As used in this Act*—

\* . \* \* \* \* \* \* \*

"(m) The terms 'child,' 'father,' and 'mother' do not include a child or parent by adoption unless the adoption took place before January 1, 1924."

This section in terms specifically limits the applications of this definition to the word "as used in this act," meaning the act of 1924. The only place where the word "child" appears in the act of 1924, which has any bearing upon the present case, is in section 13 (c) (8 USCA § 213), where it says: "Or (2) is the wife, or the unmarried child under 18 years of age, of an immigrant admissible under such subdivision (d), and is accompanying or following to join him."

It is certain that the applicant can derive no comfort from this provision, for, if he is to be considered as the adopted child of Chin Mon, he is not the child of an immigrant minister or professor, who has come to or is seeking admission into this country for the purpose of carrying on the vocation of a minister or professor. My associates do not entertain this view. They agree with the contention of the applicant, to which I cannot assent for the definition is restricted in its application, by the act itself, to the word "as used in this act" and not as generally used or as used in other immigration acts or laws.

This conclusion is also confirmed by section 28, subd. (g) (8 USCA § 224):

"(g) The term 'immigration laws' includes such act [Immigration Act of 1917], this act, and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, or expulsion of aliens."

This provision, read in connection with the other provisions of section 28 (8 USCA § 224), shows that Congress, in defining the word "child," did not intend to define it as generally used in the immigration laws and all laws, conventions, and treaties relating to the immigration, exclusion, or expulsion of aliens.

[2-4] As to the other question, we are of the opinion that, on the evidence submitted, the court below was not warranted in assuming or finding that the applicant was the adopted son of Chin Mon; and that this question is presented by the first assignment of error, to the effect that the court erred in ruling that the applicant was unlawfully restrained of his liberty and in ordering his discharge from custody; or, if not so raised,

that the error is a plain one of which we may take notice, though not assigned. The evidence bearing on the question of adoption, as given by Chin Mon, was that Chin Mon, in 1915, while he was living in this country and unmarried, sent $300 to his uncle, Chin Ngui Pick, in China; that with the $300 the uncle purchased the applicant from the boy's father, Chin Si Jack, for Chin Mon, and took him to live with him at Chin Mon's house in China; that the boy's name before the purchase and sale was Chin Mon Yin, but was later changed, at the direction of Chin Mon, to Chin Yuen Yin; that about eight years later (1923) Chin Mon went to China; that he found the boy at his home; that two days after his arrival he was married to Goon Shee in his house, his uncle having effected an engagement with her in his behalf some eight or more years before, and taken her to Chin Mon's house, where she remained during the eight years and until Chin Mon came and married her; that the boy was present at the marriage; that Chin Mon told the boy he was his adopted son, who said he knew it, and later, while in China, introduced the boy to Jung Hung Dock and others as his adopted son; that Chin Mon remained in China until July, 1924, when he returned to this country, having while there had born to him one son and begotten another.

A red paper, marked "Exhibit A," bearing Chinese writing, was introduced in evidence, of which the following is a translation:

"I, Chin Si Jack, now need some money very bad, but as there is no way to get it I am satisfied to sell my son for some money. I let Ah Gop take my son, Chin Yuen Yin, to Fow Ngoot village, Sun Ning District, to sell to Chin Quock Ming [Chin Mon] for the sum of three hundred dollars ($300.00). Chin Quock Ming's representative, Chin Ngui Pick, paid that amount to Chin Si Jack. Ah Gop was witness. They are afraid no proof, therefore they made out this red paper for keeping. C. R. 4—11—11—Paid the full amount this date. Goon Jack write this red paper."

Chin Mon testified that Chin Si Jack was the applicant's blood father; that he did not know the mother's name. It will be noted that this paper is dated C. R. 4—11—11 (Dec. 17, 1915); that it speaks of Chin Si Jack as the boy's father and of the boy's name as being Chin Yuen Yin. It is also to be noted that Chin Mon testified that the boy's name at this time was Chin Mon Yin, and that he, after hearing of the purchase of the boy, wrote to China directing that the boy's name be changed to Chin Yuen Yin. This indicates that the paper did not have its origin at the time it purports to have been made; that it was conceived at some later time, and tends to discredit the whole affair.

The applicant, among other things, testified that he was the blood son of Chin Mon; that he was never told by Chin Mon or any one else that he was his adopted son, and was never introduced to Jung Hung Dock or any one else as his adopted son; that he never knew any one by the name of Jung Hung Dock (Jung Hung Dock was called as an identifying witness and testified he had seen the applicant at Chin Mon's house in China on two different occasions, and that the applicant was introduced to him as the adopted son of Chin Mon), and, when Jung Hung Dock was called before him, was unable to identify him as any one he had seen; that he was not present at the marriage of Chin Mon and Goon Shee; that he had never seen Goon Shee until after the marriage; and that she never told him he was Chin Mon's adopted son. If Goon Shee went to live at Chin Mon's house in November 1915, as testified by Chin Mon, and if the applicant went to live there in December, 1915, and both continued to live there until Chin Mon returned to China in July, 1923, and if the applicant was Chin Mon's adopted son, it would seem that he would have seen and known Goon Shee during those eight years. The burden of proof is by statute placed upon the applicant to establish his right to enter the country. Section 23 (8 USCA § 221). This he has failed to do.

[5] Then again, there is no evidence showing what the law of China is on the question of adoption. The absence of this alone is sufficient to warrant an adverse holding. It has been so held in the Ninth Circuit. White v. Kuock Sue Lum (C. C. A.) 291 F. 732, 734, 735.

The order of the District Court is reversed, and the case is remanded to that court, with directions to return the applicant to the custody of the Commissioner of Immigration.

ANDERSON, Circuit Judge (dissenting). As indicated in Judge BINGHAM'S opinion, I concur with Judge JOHNSON in holding that the act of 1924 adopts the construction by the courts (Johnson v. Shue Hong [C. C. A.] 300 F. 89 and cases cited) of the former acts as to adoptions prior to 1924; and this without regard to race.

Judge BINGHAM'S opinion—in effect a dissent from that view—seems to me to overlook two controlling principles in statutory construction:

(1) That every Legislature, in amending, is assumed to know and adopt the existing status of rights, except as by new provisions, it changes that status;

(2) That every act is to be construed as a whole,—not disregarding (as his opinion in effect does) the definition of child in section 28 (m) (8 USCA § 224) in order to give dominant effect to section 13 (8 USCA § 213).

The jurisdiction taken in this case is not, as stated by Judge BINGHAM, "wholly conjectural"; it is grounded flatly on the contention that adoptions prior to 1924 are not touched by the act of 1924. No other issue was pleaded, tried, or argued before the court below. The single question is of statutory construction beyond the United States. As the ruling below, on this single question open, is by a majority of this court held right, the only tenable result is affirmation.

I must dissent from the view that this court may reverse the decision below on the ground that there was no evidence of adoption. No such question is before us on the record; it has not been briefed or argued. The first assignment of error (merely that the court below erred in discharging Chin Yuen) cannot fairly be extended to cover it. It is not "a plain error not assigned," open under Rule 11. The decision of the Immigration officials is conclusive on points on which there is substantial evidence, unless there is some illegality or unfairness. Johnson v. Damon (C. C. A.) 16 F.(2d) 65, and cases cited. They are, to a degree, experts on Chinese law and customs, and we are not. There was abundant evidence of adoption in implied conformity to Chinese law or custom. Chin Mon, the adoptive father, expressly so testified. The red paper quoted in the majority opinion is a sale by the blood father of his son, not into chattel slavery, which does not exist in China, but into sonship to Chin Mon. It cannot fairly be otherwise interpreted.

It is a curious and interesting fact that, with other races and under other systems of law, far more recognition is given to adoption as a means of perpetuating and enlarging the family unit, than with us and under a system grounded on the common law of

England. 1 C. J. p. 1371; Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Am. St. Rep. 672, 9 Ann. Cas. 775; Morse v. Osborne, 75 N. H. 487, 77 A. 403, 30 L. R. A. (N. S.) 914, Ann. Cas. 1912A, 324. The Egyptians, Hebrews, Greeks, Babylonians, Romans, and Spanish, all practiced adoption; while at common law, adoption was unknown. By statute we have approached the family standards of the older civilizations.

With the Chinese, ancestor worship and the desire for children (blood or adopted) are closely allied, and grounded in deep religious sentiment. With them family connotes much more than with us of the Occident. These frequent records in Chinese cases abound with references to visiting the graves of ancestors, to ancestor worship, to ancestral halls in the villages. The evidence as to the adoption of this applicant must be viewed against this background. The Board of Review did so view it. This court has no right to reverse the conclusion there reached on a question of fact supported by substantial evidence. It was for the immigration officials, not for this court on habeas corpus, to say whether more evidence was necessary as to the Chinese law on adoption, —or as to the facts relative to this particular adoption.

This court is in effect giving the immigration officials a direction to retry the applicant's case on a point that it has already tried and determined in his favor; for, of course, he cannot be deported without a full opportunity to bring himself within the ruling now made.

The worst aspect of the decision now made is that this court is deciding a question not before it and without hearing it. This American citizen and his adopted son have not the slightest reason even to suspect that this court is considering the validity of the adoption. Administrative tribunals have been reversed by courts for less disregard of the elementary principles of due process of law. Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010; Int. Com. Com. v. L. & N. R. R., 227 U. S. 88, 91, 33 S. Ct. 185, 57 L. Ed. 431; Whitfield v. Hanges (C. C. A.) 222 F. 745, 749, 754; Ex parte Petkos (D. C.) 212 F. 275; United States v. Petkos (C. C. A.) 214 F. 978; Lewis ex rel. Lai Thuey Lem v. Johnson (C. C. A.) 16 F.(2d) 180.