**JEW HONG SING v. TILLINGHAST, Commissioner of Immigration.**

Circuit Court of Appeals, First Circuit.
November 5, 1929.

No. 2371.

Walter Bates Farr, of Boston, Mass. (Everett F. Damon, of Boston, Mass., on the brief), for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge. A case arising on a petition for a writ of habeas corpus, the petitioner contending that he had been wrongfully ordered deported by the immigration officials. The District Court sustained the action of the immigration officials and dismissed the petition, and the case is here on appeal.

The issue here is whether the petitioner was denied a fair hearing before the immigration officials, or whether their decision was so arbitrary as to be unreasonable and a denial of due process. Chin Wing Goon v. Johnson (C. C. A.) 20 F.(2d) 116; Kwock Jan Fat v. White, 253 U. S. 454, 457, 458, 40 S. Ct. 566, 64 L. Ed. 1010; Johnson v. Kock Shing (C. C. A.) 3 F.(2d) 889.

The burden is on the applicant to prove in the first instance that he was entitled to admission. White v. Chan Wy Sheung, (C. C. A.) 270 F. 764. In this case he claimed the right as the son of an American-born citizen. It was necessary for him to satisfy the immigration officials (1) that the alleged father was an American-born citizen and (2) that he was a son of that citizen. The case turns on the question of the identity of the applicant.

It is admitted that the alleged father, Jew Ngew Ark, is a citizen of this country. The Board of Special Inquiry and the Board of Review, however, found that the relationship of the applicant as the son of Jew Ngew Ark was not satisfactorily established. It was perhaps clearly established that Jew Ngew Ark had a son by the same name as that given by this applicant, and both the alleged father and the applicant testified to many details of their village and home life consonant with the relationship claimed; but the immigration board found material discrepancies in their testimony that cast a doubt in the minds of the members as to the credibility of the alleged father and the applicant.

The applicant testified that Jew Kung Thlue was the married name of the alleged father, which is the name by which one is more commonly known in his family after marriage; and that the married name of his paternal grandfather was Jew Kee Wee.

The father, however, testified that the reverse was true.

Again, the applicant testified that, when the alleged father visited China four years before the time of his testimony, he and the alleged father went to a neighboring village where photographs were taken including the one attached to an affidavit in the case; that the photographs were brought by the alleged father with him to this country on his return; that in going to the village they crossed by a bridge a stream flowing in front of their home village on the north. The alleged father testified, and repeated it after the applicant's testimony was called to his attention, that he did not leave the home village with "my son, Jew Hong Sing, while there in 1924"; that he did not go with him to have any photographs taken; that there was no bridge over the stream on the north in front of the home village; that he did not bring any photographs with him on his return, but on the contrary, his wife sent the photograph attached to the affidavit to him by mail less than a year prior to the giving of his testimony, which was the first time he ever saw the photograph.

What weight should have been given to the failure of the alleged father to identify the applicant as his son, when asked by the interpreter to pick him out from among other Chinese boys at the detention rooms, was for the Board of Inquiry to determine. The father explained that his error was due to the darkened room into which he was suddenly brought from the light, but the record shows that he walked up and down in front of the several applicants one or two minutes after coming into the room before making his erroneous decision, although he afterward corrected his mistake and pointed out the applicant, Jew Hong Sing.

Other minor discrepancies appear in the testimony, which alone would not be sufficient to warrant a denial of the petitioner's application for admission.

Whatever might have been the conclusion of this court from all the evidence, if it could have seen and heard the witnesses, it cannot say that the evidence, in the face of the discrepancies appearing, required the immigration officials to conclude that the applicant was the person he claimed to be, namely, Jew Hong Sing, the son of Jew Ngew Ark. We think there was some substantial evidence on which the immigration officials could base their conclusion to the contrary. ▆▆ It is not open to this court on a petition for habeas corpus to consider the credibility of the witnesses or the weight of evidence. White v. Chan Wy Sheung, supra; United States v. Uhl (C. C. A.) 211 F. 628; Ong Chew Lung v. Burnett (C. C. A.) 232 F. 853; Chan Kam v. United States (C. C. A.) 232 F. 855.

A denial of a fair hearing does not follow merely because the conclusions of the immigration officials appear to the appellate court to have been wrong. Chin Yow v. United States, 208 U. S. 8, 13, 28 S. Ct. 201, 52 L. Ed. 369; United States v. Day (D. C.) 19 F.(2d) 520.

The decree of the District Court is affirmed.