## SERCERCHI v. WARD, Commissioner of Immigration.

### No. 6030.

District Court, D. Massachusetts.

April 17, 1939.

Abraham Zintz, of Cambridge, Mass., for petitioner.

John A. Canavan, U. S. Atty., and Alfred G. Malagodi, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This is a petition for a writ of habeas corpus, the petitioner contending that he has been wrongfully ordered deported.

The petitioner, Enrico or Henry Sercerchi or Serchi, is now about fifty years of age and a native of Italy. It is agreed that he had a legal admission to the United States on May 26, 1910 at Fort Kent, in the State of Maine. Between the years 1910 and 1913 he worked for the Merry Bros., of Bangor, Maine, at railroad construction work at Sqaw Pan, Maine, and in 1913 went to work for the Canadian Pacific Railway Company and remained in their employ up to April 27, 1926. He was employed by the latter company as a laborer, interpreter, extra gang foreman, and section man during this period. In the year 1911 he was married and lived with his wife and her sister until 1916 in Millinocket, Maine, where his third child was born, his other children, of which there were five, being born in Canada. The Division Headquarters of the railroad were at Brownville Junction, Maine. After the birth of the third child he and his wife lived in box cars of the railroad company in Brownville Junction, Maine. In 1918 his wife left him and returned to Woodstock, New Brunswick, Canada, which was her home before her marriage, and has lived there ever since. The petitioner's principal job was that of a repair foreman and it was necessary for him to travel around from place to place where the work was to be done in Maine and Canada. After his wife left him he visited Canada at different times through Houlton and Vanceboro, Maine, where, because of these frequent trips on the railroad and to visit his wife, he was well known to the United States Immigration inspectors; they never interfered with his goings and comings. The gang in which he was employed worked out of McAdam Junction, New Brunswick, Canada, on the railroad between St. John, New Brunswick and Megantic, P. Q., Canada. He testified the longest time he spent in Canada working for the railroad during the period from 1913 to 1926 was two or three weeks, and his longest visit for the purpose of visiting his wife was two days.

Although the petitioner at the initial hearing testified that he left McAdam Junction, New Brunswick, Canada, in 1920 and 1921 and went to Frankfort, Maine, to work in the summer, and from there to Florida in the winter, and in the subsequent years up to 1926 he worked in various towns in Maine, visiting Florida in winter for the purpose of raising tomatoes and only returned to Canada except for a visit for a day or two, yet the record of the Canadian Pacific Railway Company showed that he entered their employ March 14, 1913, secured a leave of absence on account of illness February 20, 1926, and was dismissed from the service April 27, 1926. The records of the company further showed that the petitioner resided at McAdam Junction, New Brunswick, Canada, from May 1, 1922 until February 20, 1926. The records of the Canadian Pacific Railway Company were silent as to the various dates he was employed in Maine and Canada. In a later hearing the petitioner claimed, when the record of the Canadian Pacific Railway Company was exhibited to him, that he was in error as to the dates; that he actually left the employ of the railroad in 1925 or 1926 and then returned to Maine where he worked for various contractors visiting Florida to raise tomatoes in the winter. He denied he ever lived in McAdam Junction, or that he gave McAdam Junction as his place of residence to the railroad officials and maintained he lived in Maine and nev-

er gave up his residence or domicile he had acquired in that state.

On February 13, 1925 the petitioner became a naturalized citizen of Canada. He made the petition at Woodstock, New Brunswick, Canada, the original and the then home of his wife. He had the Canadian certificate of naturalization in his possession at the time of the hearing. On the reverse side of the certificate under the heading of "Particulars" appeared the following, "Henry Sercerchi, address: Woodstock, New Brunswick, Canada; trade or occupation: sectionman." By the provisions of Chapter 138, Revised Statutes of Canada, 1927, Section 4(a), the following conditions and qualifications were necessary for naturalization: (1) residence within His Majesty's Dominions for a period of not less than five years; (2) residence in Canada for not less than one year immediately preceding the application. Statements of the possession of these qualifications were demanded over the signature of the applicant in the petition for naturalization. The petitioner testified that at this time he intended to bring his wife and family back to the United States and consulted a barrister in Woodstock, New Brunswick, one C. J. Jones. The latter advised him to become a citizen and in that way bring the whole family into the country. The petitioner testified that he never intended really to become a citizen of Canada; that he had a domicile in the United States and intended to keep it and would not have executed a petition for naturalization except upon the advice of the barrister; that after he procured the certificate of naturalization his wife changed her mind and refused to come to the United States. He further testified that at this time he left Canada and that he was never out of the United States thereafter, although the records of the Canadian Pacific Railway Company showed that he procured a leave of absence in July 1925, resumed work as a sectionman out of McAdam Junction, New Brunswick, in December of 1925; was laid off because of illness February 20, 1926, and was dismissed from the service of the railroad April 27, 1926.

Reports were made by inspectors of the Department which showed that several persons were interviewed at McAdam Junction, New Brunswick, who stated they had not seen the petitioner in that town since 1920 or 1921 and the Chief of Police at Woodstock, New Brunswick, the home of the petitioner's wife, stated on April 5, 1938 that he had not seen the petitioner for 16 or 17 years. The petitioner's wife on this date said that she knew little about her husband; that he never lived in Woodstock, New Brunswick, but had been engaged in construction work for the Canadian Pacific Railway Company at McAdam Junction, New Brunswick, and came home only occasionally; and she further stated that the authorities at Woodstock required her to pay his poll tax every year. The records of the Department showed his last entry into the United States was at Houlton, Maine, in the fall of 1927.

Although the petitioner claimed that he had never given up his domicile in the United States since he was legally admitted to the United States in 1910, and that his residence was in the box cars furnished by the Canadian Pacific Railway Company, the Immigration officials concluded on the above facts that the domicile of the petitioner was in Canada at least between the years 1922 to 1926, if not before, and that the petitioner had forfeited the rights obtained through his legal admission to the United States in 1910.

A warrant for deportation dated July 23, 1938 was issued on the ground that at the time of the petitioner's entry into the United States in the fall of 1927 he was not in possession of an unexpired immigration visa. Immigration Act of 1924, § 13, 8 U. S.C.A. § 213.

At the hearing before the Immigration authorities a copy of the record of the Canadian Pacific Railway Company of the employment of the petitioner was introduced in evidence. The copy of the record appeared in a letter signed by the Superintendent of the railway company addressed to the Inspector in Charge of Immigration and was sent to the authorities at their request. No objection was made to its introduction at the time of the hearing and the petitioner was interrogated in reference to the facts stated therein both by his own counsel and the inspector conducting the hearing. Ample opportunity was given the petitioner to produce evidence in refutation of the facts set out in the copy of the railway company's record.

It is now contended by the petitioner that such evidence could not be considered on the ground that it was hearsay. There is no merit in this contention inasmuch as the strict rules of evidence applicable in judicial proceedings do not obtain in deportation inquiries before the Immigra-

tion authorities and a hearing is not necessarily unfair as contended by the petitioner merely because the rules of evidence applicable to judicial proceedings have not been strictly followed. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 157, 44 S.Ct. 54, 68 L.Ed. 221; United States ex rel. Di Tomasso v. Martineau, 2 Cir., 97 F. 2d 503; Hays et al. v. Hatges, 8 Cir., 94 F. 2d 67; Ghiggeri v. Nagle, 9 Cir., 19 F.2d 875; Lewis ex rel. Lai Thuey Lem v. Johnson, 1 Cir., 16 F.2d 180; United States ex rel. Femina v. Curran, 2 Cir., 12 F.2d 639, 640. And it is further well established that hearsay evidence may be used when an opportunity is given to explain or rebut it. Lewis ex rel. Lai Thuey Lem v. Johnson, supra.

■ In the instant case the petitioner was not deprived of an opportunity to produce evidence in refutation of the facts set out in this communication, and consequently hearsay evidence could be used. Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010; Tang Tun v. Edsell, 223 U.S. 673, 32 S.Ct. 359, 56 L.Ed. 606; Lewis ex rel. Lai Thuey Lem v. Johnson, supra.

■ The petitioner further contended there was no evidence to support the findings of the Immigration officials. To this I cannot agree. It is apparent from the foregoing facts that the deportation order was supported by substantial evidence and consequently the findings made are not subject to review by this court. There was sufficient evidence adduced in addition to the records of the railway company, including the petitioner's naturalization as a citizen of Canada, upon which the authorities could find that the alien was domiciled in Canada between the years 1922 to 1926, although it was difficult to determine where his domicile was before that date, because of his living in box cars and moving from place to place. In fact the only substantial evidence, after 1913 when he went to work for the railway company, of residence and purpose to make that place his home (State of Texas v. State of Florida, 59 S.Ct. 563, 83 L.Ed. ——, March 13, 1939), would lead one to the conclusion his domicile was in Canada, and it was necessary for him, in order legally to enter the United States after 1926, to have in his possession an unexpired immigration visa (Immigration Act of 1924), which he did not possess at the time of his entry in 1927.

The question of the weight of the evidence is not for this court if there is present substantial evidence upon which the findings can be made. Costanzo v. Tillinghast, 287 U.S. 341, 53 S.Ct. 152, 77 L.Ed. 350; Ex parte Nunez, 9 Cir., 93 F.2d 41; United States ex rel. Gong Sik Ho v. Corsi, 2 Cir., 62 F.2d 785; Jew Hong Sing v. Tillinghast, 1 Cir., 35 F.2d 559.

Inasmuch as the petitioner based his claim of arbitrary and unfair conduct on the part of the Immigration authorities upon the matters discussed, in view of the above conclusions, the petition must be dismissed and the writ denied.